158 So. 326

### STATE v. WILLIS.

No. 32982.

Jan. 7, 1935.

John R. Hunter, of Alexandria, for appellant.

G. L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and A. V. Hundley, Dist. Atty., and B. F. Thompson, Jr., Asst. Dist. Atty., both of Alexandria (Lessley P. Gardiner, Sp. Asst. to Atty. Gen., of counsel), for the State.

O'NIELL, Chief Justice.

The appellant was prosecuted for murder, was found guilty, without capital punish-

ment, and was sentenced to life imprisonment. The record contains five bills of exception.

The question presented in two of the bills is whether it was permissible for witnesses who had had years of experience in the use of shotguns and other firearms to express their opinion to the jury as to whether a shotgun, which was found at the home of the party accused about twelve hours after the killing, had been fired recently. The objection which was made to the testimony was that the witnesses were not experts in the science called ballistics—the science of the motion of projectiles. One of the two witnesses was the coroner, and the other was a deputy sheriff. Each of them declared that, from many years of experience, he could tell from the odor and appearance of the burned powder in the barrel of a shotgun if it had been fired recently. They testified that the gun which they found at the home of the accused party, on the morning after the homicide, had been taken apart, and that the barrels had been dipped into ashes, or that ashes had been poured into the barrels, but that they could tell from the odor and freshness of the burned powder in the barrels that the gun had been fired recently. The rule which forbids a nonexpert witness to express his opinion has reference to scientific subjects on which an individual's opinion is of no value unless he is versed in the particular science. But, as to subjects on which any person of experience may form an accurate opinion from the facts which he has observed, a nonexpert witness may give the jury the benefit of his opinion, provided he states the facts on which the opinion is founded, because then the jury also is governed by

the facts, in determining whether the opinion is well founded. There is no danger that a jury will attach too much importance to the opinion of the witness in such a case, as when one testifies that from the odor and appearance of the burned powder in the barrel of a shotgun and from his long experience in such matters he is of the opinion that the gun was fired recently, provided he states the facts on which his opinion is founded. What makes such testimony admissible is that there is no danger of deception. Whatever objection there may be to such testimony has reference to its sufficiency or its effect, not its admissibility.

▪▪ The question presented in two other bills of exception is whether a so-called dying declaration was admissible in evidence. It appears that the victim of the homicide was the common-law wife of Prince Willis, the party accused. She had left him, after a quarrel, and had returned to the home of her parents; and he had tried to persuade her to return to him. Early one night she and the other occupants of the house of her parents were disturbed by a noise in the yard, and went out to investigate. She went in front of the other members of the party, two of whom carried lamps. Suddenly and without warning she was shot in the abdomen by an unknown person in the yard, with a shotgun loaded with fine shot. She was carried immediately into the house, and, being placed upon a pallet, she said: "Prince shot me." Then she rolled off of the pallet, and, as one of the bystanders took her by the hand and replaced her on the pallet, she said, "Good-bye, I am going to die." A few minutes later she died. The objection which was urged, and which is yet urged, to the statement that Prince (meaning Prince Willis) shot her, is that this statement was not preceded by the statement, "I am going to die." It is argued that the woman might not have known that she was going to die when she said, "Prince shot me." But the testimony leaves no doubt that there was scarcely an interval between the statements, "Prince shot me," and "Good-bye, I am going to die." All that the law requires, to make the declaration of a dying person admissible in evidence, is proof that the dying person knew that he was about to die when he made the declaration; and such proof may be furnished as well by what was said immediately after as by what was said immediately before the so-called dying declaration. State v. McCollum, 135 La. 432, 65 So. 600. Our conclusion, therefore, is that the dying declaration was admissible in this instance.

The fifth bill of exceptions was reserved to the overruling of a motion for a new trial, and was merely a repetition of the complaints already made.

The verdict and sentence are affirmed.