LAND, Justice.
 

 Defendant, charged with the murder of Willie Green in the parish of Rapides on the 13th day of October, 1936, was found guilty as charged, without capital punishment, and was sentenced by the court to serve, for the remainder of his natural life, in the State Penitentiary.
 

 The appeai by defendant from the conviction and the sentence is based upon three bills of exceptions. The first bill was reserved to the ruling of the trial judge permitting the introduction of evidence of a dying declaration, the contention of defendant being that the proper foundation for the introduction of such evidence had not been laid by the State. j
 

 (1) In the first place, it is shown by thej testimony of the attending physician that Willie Green,- the deceased, received three gunshot wounds, any one of which would have proven fatal.
 

 When first taken to his house from the scene of the shooting, the deceased may have had some hope of living, when he said to his mother, Amelia Green, “Take me to a doctor as fast as you could.” But after the deceased began to weaken from loss of blood, evidently he had given up all hope of recovery, as evidenced by his statement: “Mama, let me lay on your shoulder. Mama, no use to take me town. I am going to die.”
 

 Malinda Green, wife of the deceased, testified that he stated he was “shot to death,” and that there was no use to take him to the hospital for he was “shot to death.”
 

 Finally, deceased said to his mother: “Mama, Oscar fooled me to his house and shot me for nothing. Goodbye to you all. I won’t come back here alive no'more. I am going to die.”
 

 While this statement of his belief that he was going to die followed the naming of the person who shot him, yet it was a continuing statement made at the same time and place and showed conclusively that he had no hope or expectation of living.
 

 
 *65
 
 In State v. Willis, 181 La. 154, 158 So. 826, 827, the deceased stated; “Prince shot me,” and shortly after said, “Good-bye, I am going to die.” In that case it was held that the dying declaration was admissible. In arriving at this conclusion, this court said: “All that the law requires, to make the declaration of a dying person admissible in evidence, is proof that the dying person knew that he was about to die when he made the declaration; and such proof may be furnished as well by what was said immediately after as by what was said immediately before the so-called dying declaration. State v. McCollum, 135 La. 432, 65 So. 600.” 181 La. 154, at page 158, 158 So. 826, 827.
 

 We find no error in the ruling of the judge a quo in admitting the dying declaration.
 

 (2) The second bill of exception was reserved to the exclusion by the trial judge of the testimony of the wife of the defendant.
 

 As stated by counsel for defendant in the bill reserved: “Mary Clifton, wife of the defendant, was tendered as a witness for the defense, and the defendant undertook to prove that the deceased visited his home earlier in the night, and while there made a felonious attack upon his wife during the absence of her husband. The facts surrounding the killing show that the husband returned to the house about midnight, and he testified that as he started toward the front of his house, or home, the deceased made a rush towards him, and that he undertook to halt the deceased, but without success, and that he had to shoot the deceased who continued to come on him after he had undertaken several times
 
 to
 
 halt him. The evidence of Mary Clifton as to the previous attack was offered to
 
 show the condition of the mind of the deceased
 
 when he returned to the defendant’s home at midnight, and to throw light on his action, in making the attack on the accused, which was objected to and which objection was sustained.”
 

 In the per curiam to this bill, the trial judge states that: “This testimony was offered apparently for the purpose of urging a plea of the ‘Unwritten Law,’ or for the purpose of reducing the crime from murder to manslaughter; but since it was shown by the evidence that the said Mary Clifton, wife of the accused, had not seen and therefore had never communicated to her husband the alleged attack, the court ruled the evidence inadmissible.
 

 “The court learns
 
 for the first time
 
 upon reading the bill of exception, that the evidence was to go, or same was to prove
 
 the state of mind of the deceased
 
 when he made the alleged attack upon the accused at the time of the homicide.
 

 “The court believes, considering all the evidence in the case, that the testimony was inadmissible even for the purpose claimed by the accused.
 

 “But, even if admissible, the ruling of the court could have resulted in no injury to the accused; for, the accused had testified to the jury, and there was no witness to rebut his testimony, that the deceased had made a rush and attack on him, the accused, and that accused tried to halt deceased without avail, until he was forced to shoot him.
 

 
 *67
 
 “A theory as to what could have been in the deceased’s mind when he made the alleged attack could hardly be material, when uncontradicted testimony of the attack, its continuance, and fierceness was already before the jury. It' was only cumulative, to say the most of it.
 

 “For these reasons the evidence was excluded.” Tr., pp. 11, 12 (Italics ours.)
 

 The accused pleaded self-defense in justification of the killing. All the facts to sustain this plea were before the jury. The dying declaration of the deceased, that the accused had “fooled” him to his house on the night of the killing and had
 
 “shot
 
 him for nothing,” was also before the jury. The jury believed the statement made by the deceased in his dying declaration, as shown by their verdict in this case.
 

 Under all the circumstances of the case, testimony as to what was in the mind of the deceased, at the time of the homicide, was clearly immaterial. The ruling of the trial judge is correct.
 

 (3) The third bill was reserved by defendant to the overruling of a motion for a new trial, based upon the errors alleged in the bills already disposed of, and upon the ground that the verdict was contrary to the evidence, in that the evidence tendered by defendant under his plea of self-defense justified an acquittal.
 

 This court has no appellate jurisdiction over facts affecting the guilt or innocence of the accused.
 

 We find no error in the overruling of the motion for new trial by the judge a quo.
 

 The conviction and sentence are affirmed.
 

 ' O’NIELL, C. J., dissents from the ruling, on bill No. 2.