JOHNSTONE, Justice.
The plaintiff brought a medical malpractice action against Wade Chiropractic Clinic and Dr. Thomas Zink, a chiropractor employed by the clinic. The plaintiff alleged that Dr. Zink, as an employee of the clinic, negligently injured her jaw during an adjustment. After discovery, the defendants moved for summary judgment on September 30, 1998. On October 8, 1998, plaintiffs counsel moved to withdraw. On November 20, 1998, the trial court granted counsel’s motion to withdraw and set a hearing date of January 15, 1999, for the defendants’ motion for summary judgment. On December 16, 1998, the plaintiff retained new counsel. On January 13, 1999, plaintiffs new counsel filed an opposition to the defendants’ motion for summary judgment and submitted, among other things, an affidavit of the plaintiffs expert Dr. John Triano in opposition to the motion for summary judgment. The next day, the defendants moved to strike the affidavit of Dr. Triano on the ground that the affidavit contradicted Dr. Triano’s deposition testimony. On January 19, 1999, the trial court heard the defendants’ motion for summary judgment and their motion to strike Dr. Triano’s affidavit. On February 2, 1999, the trial court denied the defendants’ motions in the following order:
“In support of the Defendants’ motion for summary judgment, the Court has been presented with the deposition testimony of Dr. John Triano. Dr. Triano is a chiropractor who practices in Texas and has been identified as an expert witness on behalf of the plaintiff. Dr. Triano’s deposition was taken on September 16, 1998. Dr. Triano reserved the reading and signing of his deposition *1161 and made no changes or corrections. The Court has also been presented with an affidavit of Dr. Triano, which is dated January 20,1999. The affidavit and the deposition are in direct conflict. Based upon the information available to him at that time, Dr. Triano concluded in his deposition that neither of the defendants breached an acceptable standard of chiropractic care in and about their treatment of the Plaintiff, and that neither of the defendants caused injury to the Plaintiff.
“In his deposition, Dr. Triano also offered the opinion that the injuries to the Plaintiff were the result of one of two circumstances: a motor vehicle accident prior to the occasion made the basis of this action; or the manipulation performed upon the Plaintiff by the Defendants. Based upon the information Dr. Triano has been provided prior to his deposition, Dr. Triano testified that the Plaintiffs injury resulted from the motor vehicle accident.
“After being provided with additional information, including records showing that the motor vehicle accident occurred in 1993, two years prior to [the] occasion made the basis of this action, the complete records of the dental and medical treatments rendered to the Plaintiff, as well as the complete deposition testimony of the Plaintiff and of the Defendants, Dr. Triano was asked to assume facts contained within all the information provided. Presented with a hypothetical question based upon facts contained within the records and other information provided to him, both prior to and subsequent to his deposition, Dr. Triano testified in his affidavit of January 20, 1999:
“ ‘Based upon my review of the medical records provided me, based upon my review of the deposition testimony provided to me, based upon my education, training, and experience, and assuming the above facts to be true and accurate it is my professional opinion, to a reasonable degree of Chiropractic certainty that the defendants did breach the acceptable standards of Chiropractic Care of this national Chiropractic community. Said breach resulted from failing to properly take complete history from the plaintiff and by improperly performing an adjustment to her jaw without doing so. Said breach of the acceptable standards of care resulted in injury and damage to the plaintiff of acute capsulitis with probable derangement of the TMJ.’
“The opinion offered by Dr. Triano in his Affidavit is exactly opposite of that contained in his deposition. The defendants moved to strike Dr. Triano’s Affidavit.
“The Plaintiff has brought to the attention of this Court the case of Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478 (Ala.1993), in which Justice Houston held as follows:
“ ‘Because the rule precluding inconsistent testimony from establishing a genuine issue of material fact applies only to the testimony of parties, not to the testimony of witnesses, Tittle v. Alabama Power Co., 570 So.2d 601 (Ala.1990), we need not address whether Grim’s affidavit is inconsistent with his deposition testimony.’
“ ‘ “[T]o date this Court has applied the rule stated in [Robinson v. Hank Roberts, Inc., 514 So.2d 958 (Ala.1987), and Lady Corinne Trawlers v. Zurich Ins. Co., 507 So.2d 915 (Ala.1987), which precludes the creation of genuine issues of material fact from inconsistent testimony,] only to parties, *1162 recognizing the motivation they might have to fabricate a sham affidavit. There is no reason to assume the disinterested third parties possess the same motive, and thus, the logic that supports the application of the rule to parties is not present.” ’
“570 So.2d at 604.
“ ‘Like the affiant in Tittle, Grim was not a party and had no motive to fabricate an issue. Grim was simply an expert witness; although compensated by the Yarbroughs to testify, he was disinterested. Because Grim was not a party, the rule precluding one from creating genuine issues of material fact by contradictory or inconsistent testimony does not apply to him; therefore, the trial court erroneously struck his affidavit.’
“Pursuant to Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478 (Ala.1993), the Defendants’ Motion to Strike the Affidavit of Dr. Triano is hereby denied.
“The Court is of the opinion that use of an Affidavit to contradict previous deposition testimony by an expert witness in a case in which the Medical Liability Act of 1987 applies presents a substantial question of first impression that should be addressed by the appropriate appellate court.” (R. 487-88.) (Emphasis added.)
The trial court held that the plaintiff had satisfied her burden of establishing the existence of an issue of fact whether the defendants had breached their standard of care. Thus, the trial court denied the-defendants’ motion for summary judgment. Likewise, the trial court denied the defendants’ motion to strike Dr. Triano’s affidavit. The trial court concluded that its orders presented a controlling question of law on whether a party opposing summary judgment should be allowed to submit an expert’s affidavit which directly contradicts the expert’s prior deposition testimony, and the trial court certified the rulings for a permissive appeal pursuant to Rule 5, Ala. R.App. P.
On April 6, 1999, this Court granted the defendants a permissive appeal to address the issue of whether this Court should depart from the holding of Tittle v. Alabama Power Co., 570 So.2d 601 (Ala.1990), and Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478 (Ala.1993), and their progeny, that the rule precluding a party from creating an issue of fact by submitting subsequent inconsistent testimony that contradicts, without explanation, the party’s prior testimony, applies only to the testimony of parties, not to the testimony of nonparties. We, however, do not reach the question of whether we should overrule precedent and depart from stare deci-sis because, in the case before us, notwithstanding the trial court’s conclusion to the contrary, the expert’s affidavit was not inconsistent with his prior deposition testimony.
A comparison of the opinion Dr. Triano stated during his deposition with the opinion he stated in his affidavit establishes that Dr. Triano’s two differing conclusions were grounded on different assumptions of facts. At the deposition, which preceded the affidavit, when defense counsel asked Dr. Triano his opinion on whether Dr. Zink caused the plaintiffs temporomandib-ular joint disorder (TMJ), Dr. Triano responded:
“A. I can’t speak to the issues of the tears, because that’s not a degenerative change. I can — the degenerative changes, I don’t think were caused by any of the physicians whose records Ive reviewed.
“Q. Can you express any opinion as to the cause of the tears that are described in the report of October 6th, 1995 ?
*1163 “A. The tears are consistent with the trauma to the joint, and I am left with only the information as to the nature of the traumas that the patient may or may not have undergone. And, so it would be one of those two traumas that I’m aware of that would be responsible for it, and I can’t say.
“Q. Which two traumas are you referring to?
“A. The record reflects, as I recall it, that there was pain onset during the assessment’s last treatment of her jaw, which is certainly concerning to anyone who is treating a patient. And second is that there was at some point in time that I have no — I have no information for. It’s only a reference in the record. That there was a car accident in which the jaw was bruised for some period of time.” (Depo., p. 46-47.) (Emphasis added.)
Dr. Triano continued to qualify his opinion about which of the two sources of trauma resulted in tears to the cartilage in the plaintiffs jaw-joints:
“A. Those are two possible sources of trauma. I believe that my opinion that I expressed is that with certain assumptions about the nature of the procedures that were performed, it is unlikely that the procedures caused damage to the joint.
“Q. Okay. Would it be your opinion then that it’s more likely that the car accident caused the damage to the joint? “A. If the assumptions with respect to the treatment are accepted, then that becomes the only known source that could cause those changes of which I am aware.
[[Image here]]
“Q. Would I be correct then and would it be your testimony that you cannot say with a reasonable degree of chiropractic or medical certainty that Dr. Wade or Dr. Zink caused the temporo-mandibular joint problems of which [the plaintiff] now complains?
“A. I do not believe that the tears in the cartilage were caused by the procedures if they were performed under the assumptions that I’ve alluded to, if they were performed properly. To that I can attest.”
[[Image here]]
“Q. Okay. So from a chiropractic standpoint, would I be correct that you cannot say that either Dr. Wade or Dr. Zink were below an acceptable standard of care with regard to their care and treatment of [the plaintiff],
“A. From the information I have, I could not say that they were below the standard of care.” (Depo., p. 43-50.) (Emphasis added.)
Dr. Triano qualified his opinion that Dr. Zink did not cause the tears in the plaintiffs jaw-joint cartilage by expressing limitations on his knowledge and factual assumptions about the lack of preexisting jaw-joint problems in the plaintiff. Dr. Triano said that in order to determine the magnitude of the tears, he would need to see the dental surgeon’s report, which he did not have for his review. (R. 43.) In stating his opinion of the cause of the injury to the plaintiffs jaw, Dr. Triano noted that he “had no information” about the motor vehicle accident in which the plaintiff had been involved. (R. 47.) Further, in stating his opinion of the cause of the plaintiffs TMJ, disorder, Dr. Triano assumed that the plaintiff was not afflicted with any of the common causes of the disorder, such as bruxism (grinding of the teeth) and malocclusion (jaw-joint deformity causing bad overbite). Dr. Triano explained further that a patient suffering from malocclusion is “best” treated by “an orthodontic or dental specialist who deals *1164 with TMJ problems.” He thereby suggested that chiropractic care is not the proper treatment for a person with malocclusion. (R. 39.)
In his affidavit, Dr. Triano opined a different conclusion about whether Dr. Zink caused the tears to the cartilage in the plaintiffs jaw-joints, on the basis of the following different or additional hypothetically assumed facts:
“1. that there was prior instability of the jaw to the extent that the Plaintiff has a Class III Skull which is more susceptible to dislocation;
“2. that the plaintiff has a history of a prior malocclusion, or a bad bite;
“3. that the plaintiff has a history of bruxism, or grinding of teeth;
“4. that the plaintiff had lost multiple teeth which were never replaced and, which resulted in drifting and tenderness in the masseteric muscle, on the right side, and hypermo-bility of her jaw;
“5. that, prior to proceeding with an adjustment to the plaintiffs jaw, the defendant failed to take any history from the plaintiff regarding her jaw, and /or failed to ascertain the ability of the plaintiffs jaw to withstand the pressures involved with such a manipulation;
“6. that the plaintiff suffered no difficulties to her jaw related to her involvement in a motor vehicle accident some three years prior to the incident made the basis of this action, and, in fact, suffered no problems with her jaw at all until the occasion of the manipulation by the defendant;
“7. that there is a videotape of the plaintiff demonstrating her ability to hold her mouth open for a prolonged period of time prior to the manipulation done by the defendant, a maneuver of which she is unable to accomplish since her injury;
“8. that immediately after the manipulation by the defendant [Dr. Zink] on the occasion made the basis of this action, the plaintiff screamed very loudly whereupon the defendant’s partner came in and asked what the defendant had done, and that the plaintiff overheard the defendant respond to his partner by saying that he had done an adjustment of the jaw, and not a muscle challenge as later described by the defendant in his deposition;
“9. that during the course of the adjustment to the plaintiffs jaw, the defendant first applied pressure, stopped, then applied more pressure the second time, whereupon the plaintiff heard a loud pop, and felt her jaw pop out of place with excruciating pain; and,
“10. that Dr. Atwell has diagnosed the plaintiffs injury resulting from the defendant’s adjustment to her jaw as acute capsulitis with probable internal derangement of the TMJ.” (C.R.354-55.) (Emphasis added.)
Assuming these facts, Dr. Triano swears to his opinion of the cause of the plaintiffs injuries:
“Based upon my review of the medical records provided me, based upon my review of the deposition testimony provided to me, based upon my education, training, and experience, and assuming the above facts to be true and accurate it is my professional opinion, to a reasonable degree of Chiropractic certainty that the defendants did breach the acceptable standards of Chiropractic Care of this national Chiropractic community. Said breach resulted from failing to properly take complete history from the plaintiff and by improperly performing *1165 an adjustment to her jaw without doing so. Said breach of the acceptable standards of care resulted in injury and damage to the plaintiff of acute capsuli-tis with probable derangement of the TMJ.” (C.R.355.)
Dr. Triano offered this second opinion with a different conclusion from his first on the basis of additional and different hypothetically assumed facts of the actual date of the motor vehicle collision involving the plaintiff; the plaintiffs condition after the collision and before Dr. Zink’s adjustment; the problems accompanying Dr. Zink’s adjustment of the plaintiffs jaw; the plaintiffs preexisting problems with bruxism, malocclusion, and hypermobility of her jaw; and the defendants’ failure to take any medical history from the plaintiff that would have alerted them to her preexisting problems. The defendants do not contend on original appeal that these hypothetically assumed facts are not supported by substantial evidence.
Instruction 15.08, Alabama Pattern Jury Instructions: Civil (2d ed.1993), explains experts’ opinions based on hypothetically assumed facts:
“Witnesses have testified in this case as experts and have expressed opinions based upon assumed facts which were set forth in hypothetical questions. The weight to be accorded such testimony is dependent entirely upon the truth of the material facts stated in the hypothetical questions and before considering the opinions of the experts, you should first examine carefully all the material facts stated in the hypothetical questions and be reasonably satisfied that they have substantially been proved to be true.”
This Court has never held that an expert is restricted to one set of hypothetically assumed facts for the formation of opinions. Indeed, astute counsel in a single deposition or trial typically may elicit multiple varying conclusions from a single expert witness on the basis of varying sets of assumptions. Moreover, this Court has not precluded even a party from submitting subsequent different testimony based on additional or different information not supplied to the party when he or she initially gave sworn testimony. See Stephenson v. Lawrence County, 782 So.2d 192 (Ala.2000); Tittle, supra, and Rickard v. Shoals Distrib. Inc., 645 So.2d 1378 (Ala.1994).
For the explained reasons, we affirm the orders of the trial court denying the defendants’ motion to strike Dr. Triano’s affidavit and denying their motion for summary judgment. Because our rationale does not depend on the exception for contradictory expert opinions allowed by Yarbrough, supra, we do not reexamine the exception.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and ENGLAND, JJ., concur.
BROWN, J., concurs in the result.