This is a products liability/negligence case. Plaintiff brought suit in the Covington County Circuit Court against: (1) defendant E.R. Squibb Sons, Inc., a drug manufacturer, alleging negligent and wanton mispackaging of R-U-100 insulin and negligent and wanton failure to adequately warn against confusing R-U-100 insulin with N-U-100 insulin; and (2) defendant Ewin Moody, a pharmacist, alleging negligence and wantonness in failing to detect the insulin mispackaging and in failing to detect that clear insulin is not the kind of insulin plaintiff requires. After a trial on the merits, and after the trial judge directed a verdict for defendant Squibb on the wantonness counts, the case went to the jury, which returned a verdict for plaintiff and against both defendants in the sum of $300,000.00. The trial court entered judgment thereon, and it is from this judgment that defendant Squibb appeals.[1]
 FACTS
Defendant Squibb manufactures and sells insulin preparations. In 1981, Squibb's line of insulin preparations included: (1) an undiluted, unmodified insulin, clear in appearance, known as R-U-100 insulin, and (2) a diluted, modified insulin, cloudy in appearance, known as N-U-100 insulin. R-U-100 insulin's clear *Page 965 
appearance is due to its unmodified state, and it is the only unmodified, clear insulin that Squibb manufactures and markets.
The two kinds of insulin are packaged in boxes of the same size and color. The boxes, however, are labeled differently:
[EDITORS' NOTE: BOXES IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 966 
[EDITORS' NOTE: BOXES IS ELECTRONICALLY NON-TRANSFERRABLE.]
Likewise, the insulin bottles are identical, except for their labels:
[EDITORS' NOTE: BOTTLES IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 967 
Each box of Squibb insulin contains an insert which provides instructions and warnings. The inserts are substantially identical, but the letter in the top righthand corner indicates the kind of insulin contained in the box (e.g., "N" or "R"). Relevant portions of the warning provided in an "R" insulin (R-U-100 insulin) insert in 1981 are as follows:
[EDITORS' NOTE: INSULIN BOX INSTRUCTIONS IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 968 
Plaintiff Cox, a retired civil engineer, was diagnosed as a diabetic in 1972. Pursuant to his doctor's directions, he has always taken N-U-100 insulin.
On or about August 20, 1981, plaintiff went to defendant Moody's drugstore and purchased insulin. Plaintiff testified that on this date he requested N-U-100 insulin,[2] as he always did. Although he did not carefully look at the box, he assumed that he had been given N-U-100 insulin. He took the insulin home and put it in the refrigerator. He never read the insulin box.
On August 24, 1981, plaintiff took the insulin out of the refrigerator, opened the box, and threw it away. He also threw away the insert that comes inside the box. He did not read either the box or the insert. Prior to using the insulin, however, plaintiff noticed that it was clear, rather than cloudy, in appearance. Because plaintiff *Page 969 
had always used N-U-100 insulin, which is cloudy, he became concerned.
The evidence is conflicting as to what happened next. According to plaintiff's testimony, he took the insulin back to Moody's drugstore and explained his concern to Moody. Moody then personally looked at the bottle and told plaintiff that the insulin was okay. It was clear, according to Cox's version of what he was told by Moody, because Squibb was in the process of removing impurities from its insulin preparations.
Defendant Moody testified that plaintiff called him at home and asked him about the insulin. Moody said that he told plaintiff that Squibb was in the process of removing impurities from its insulin, but that plaintiff should come to the drugstore so that he could look at the insulin. Moody testified that plaintiff never came into the store and saw him.
A non-pharmacist employee of the drugstore, Kathy Edmonson, testified that plaintiff came into the store on August 24 at 8:10 a.m. looking for Moody. Moody had not arrived at work yet, and she asked plaintiff if she could help him. Plaintiff gave her the bottle of insulin and said that it did not look like the insulin he had been taking. The bottle was labeled R-U-100 and contained clear insulin. Ms. Edmonson went to the back of the store and got two other bottles of R-U-100 insulin. She showed them to plaintiff, and he compared them to the bottle he had brought in with him. According to Ms. Edmonson, plaintiff said he would be back, and then he left. He did not return.
Whatever the true nature of the above events, it is undisputed that on August 24, 1981, plaintiff began taking clear R-U-100 insulin from a bottle that was so labeled. Four days later, plaintiff complained to his brother-in-law that he was nauseous and not feeling well. He had not eaten in two or three days. The next day, August 30, plaintiff was taken to a hospital emergency room. Doctors diagnosed him as being in a hypoglycemic condition which was caused by the use of R-U-100 insulin rather than N-U-100 insulin. Plaintiff suffered permanent brain damage, marked memory loss, and a personality change from extroversion to introversion.
 OPINION
In its brief, defendant Squibb alleges numerous points of error in the trial below, and our review of the record convinces us that the trial was indeed replete with error as to Squibb. However, we need address only one issue in order to reverse the judgment against Squibb: Did plaintiff make out aprima facie case of either negligent mispackaging or negligent failure to give adequate warning? In order to make out a primafacie case under either theory, plaintiff must provide at least a scintilla of evidence that defendant (1) breached (2) a duty, which (3) proximately caused (4) plaintiff's injury.[3]
 I. Negligent Mispackaging
Plaintiff alleges that defendant Squibb was negligent in mispackaging a bottle of R-U-100 insulin in an N-U-100 insulin box. Prior to using the R-U-100 insulin, plaintiff threw away the box it was packaged in. Thus, plaintiff has no direct proof of defendant Squibb's alleged mispackaging. Plaintiff, however, argues that the defendant pharmacist's deposition testimony provides evidence of Squibb's mispackaging.
In his deposition, the pharmacist apparently testified that he personally sold insulin packaged as N-U-100 to plaintiff on July 22, 1981. Plaintiff's reliance on the defendant pharmacist's deposition testimony is misplaced in two respects. First, on or about August 20, 1981, plaintiff, according *Page 970 
to his own testimony, purchased the insulin that injured him. Thus, the pharmacist's deposition testimony as to what kind of insulin he sold plaintiff on July 22, 1981, is irrelevant as to plaintiff's allegations of injury caused him by allegedly mispackaged insulin which he purchased on or about August 20, 1981. Second, the pharmacist's deposition testimony was not offered into evidence at trial for any purpose, was not before the jury, and is not before us on appeal. Thus, even if some part of the pharmacist's testimony theoretically could have provided a scintilla of evidence of defendant Squibb's alleged negligent mispackaging, it did not, because it was never brought out at trial.
Plaintiff points us to nothing else that supports his allegations of negligent mispackaging. After a review of the record, we are convinced that there is no evidence, not even a scintilla, that defendant Squibb breached its duty of care in packaging this insulin. Because plaintiff failed to make out aprima facie case of negligent mispackaging, the trial court erred in not directing a verdict for defendant on this issue.
 II. Negligent Failure to Adequately Warn
Plaintiff also alleges that defendant Squibb negligently failed to provide adequate warning of the consequences of taking R-U-100 insulin instead of N-U-100 insulin. Defendant concedes that it is under a duty to warn, and, solely for purposes of this discussion, we assume that Squibb's warnings were inadequate. As part of his prima facie
negligent-failure-to-adequately-warn case, however, plaintiff still must provide a scintilla of evidence of proximate cause: Did defendant Squibb's inadequate warning proximately cause plaintiff's injury? We think not.
The evidence is undisputed that plaintiff did not read any of the instructions or warnings Squibb provided on and with its R-U-100 insulin. And, yet, plaintiff alleges that Squibb did not "by any stretch of the imagination, warn [plaintiff] . . . that he could suffer permanent brain damage if he used regular [R-U-100] insulin when he should have been using NPH-U-100 insulin," and that this failure proximately caused plaintiff's injury. We disagree. Even if the warning accompanying this insulin had read, "WARNING — N-U-100 USERS: DO NOT SUBSTITUTE THIS R-U-100 INSULIN FOR N-U-100 INSULIN WITHOUT CONSULTING YOUR PHYSICIAN. SUBSTITUTION OF R-U-100 INSULIN FOR N-U-100 INSULIN MAY CAUSE PERMANENT BRAIN DAMAGE," it would not have altered this plaintiff's course of action and prevented his injury, because he would not have read it. Squibb's inadequate warning, therefore, did not cause plaintiffs injury.
We contrast the instant facts with a situation where a plaintiff cannot read and alleges that the written warning is inadequate for failure to include symbols, see e.g.,Hubbard-Hall Chemical Co. v. Silverman, 340 F.2d 402 (1st Cir. 1965) (affirming judgment against manufacturer of crop dusting chemicals in negligent-failure-to-warn action for death of two non-English reading Puerto Ricans where label on chemical container did not display skull and crossbones symbol in addition to written warning); or a situation where plaintiff alleges that the warning is inadequate with respect to prominence, see e.g., Spruill v. Boyle-Midway, Inc.,308 F.2d 79, 87 (4th Cir. 1962) (affirming judgment against manufacturer of furniture polish in negligent-failure-to-adequately-warn action for death of a 14-month-old child where mother did not read warning on furniture polish bottle, but warning was "not calculated to attract the user's attention, due to its position, size, and . . . coloring").
In either of the above situations, the very nature of the alleged breach is such that it causes a potential plaintiff to fail to read the warning which causes his injury. The warning might even be perfectly adequate with respect to wording, so that if a potential plaintiff read it he would appreciate the product's particular danger, alter his conduct *Page 971 
accordingly, and not be injured. But, in the situations we describe above, the warnings are potentially inadequate because they are presented in a manner that prevents a consumer from reading them and being warned.
In the present situation, we have a different kind of inadequacy. Here, nothing in the nature of Squibb's inadequate warning prevented plaintiff from reading it. Plaintiff could have read this allegedly inadequate, unspecific warning as easily as he could have read an adequate, specific warning. And, no amount of specificity would have protected this plaintiff, because he would not have read a warning. Thus, the presumed inadequacy of Squibb's warning did not proximately cause plaintiff's injury.
Therefore, we hold today that a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it.
Our holding, concerning simple negligence causation, is not novel, nor is it new to the law of products liability negligence. See e.g., Johnson v. Niagara Machine Tool Works,666 F.2d 1223 (8th Cir. 1981) (affirming trial court's directed verdict for defendant manufacturer in negligent-failure-to-adequately-warn action where evidence showed that plaintiff had not read warning); Shanklin v.Allis-Chalmers Manufacturing Co., 254 F. Supp. 223 (S.D. W.Va. 1966), aff'd, 383 F.2d 819 (4th Cir. 1967) (affirming judgment for manufacturer of farm machine in negligent-failure-to-adequately-warn action where injured farm worker alleged that manufacturer had supplied "wrong" operating manual but evidence showed that farm worker had not read manual provided); Cobb Heating and Air Conditioning Company v. HertronChemical Co., 139 Ga. App. 803, 229 S.E.2d 681 (1976) (affirming summary judgment for defendant manufacturer where evidence showed that plaintiff did not read allegedly inadequate warning); Parzini v. Center Chemical Co., 129 Ga. App. 869,201 S.E.2d 808 (1973) (reversing on other grounds, but affirming directed verdict for defendant manufacturer on issue of negligent-failure-to-warn where evidence showed that plaintiff did not read warning); McCleskey v. Olin Mathieson ChemicalCorp., 127 Ga. App. 178, 193 S.E.2d 16 (1972) (affirming judgment for defendant manufacturer in negligent-failure-to-adequately-warn action where evidence showed that plaintiff did not read warning).
Because plaintiff failed to make out a prima facie case of either negligent mispackaging or negligent failure to adequately warn against defendant Squibb, the trial court erred in overruling Squibb's directed verdict motion and allowing the case against Squibb to go to the jury. Therefore, the judgment below is due to be, and it hereby is, reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES and HOUSTON, JJ., concur.
MADDOX, J., recuses.
BEATTY and ADAMS, JJ., not sitting.
[1] Defendant Moody also filed an appeal, but after he entered into a settlement agreement with plaintiff, his appeal was dismissed upon a motion of the parties.
[2] Insulin preparations are not prescription drugs.
[3] The elements of plaintiff's prima facie case of products liability negligence are identical in number and nature to those that compose a plaintiff's prima facie case of negligence in any other area of the law. See Epstein, Products Liability:Defenses Based on Plaintiff's Conduct, 1968 Utah L.Rev. 267, 270 ("The basic elements of negligence in a products liability case are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages").