Gerald and Stephanie Yarbrough filed this action against Sears, Roebuck and Company ("Sears") and Toyotomi Co., Ltd. ("Toyotomi"), to recover damages under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), based on allegations of negligent and wanton design of a kerosene heater, failure to adequately warn of dangers associated with the kerosene heater, and breach of implied and express warranties.
The Yarbroughs purchased a kerosene heater from Sears; that heater had been manufactured by Toyotomi. A printed decal on the heater itself warned against using gasoline in the kerosene heater. Before operating the kerosene heater, the Yarbroughs read the warnings and instructions included with it, which included several warnings *Page 480 
against using gasoline as fuel for the heater. Approximately a year after the Yarbroughs had purchased the heater, Mr. Yarbrough refueled the heater with fuel that he had purchased at Shaddix Grocery in Cullman, Alabama, and had pumped from a gasoline-type fuel pump labeled "kerosene." On December 23, 1989, the heater was in the Yarbroughs' kitchen and was lighted; the Yarbroughs, who were in their living room, heard a "poof" noise from the kitchen. Upon investigation, they saw flames coming from the heater and extending approximately six inches above it. Mr. Yarbrough was burned while trying to carry the burning heater out of the house, and the house and their personal belongings were destroyed. All of the experts, including the Yarbroughs' expert, Frederick Grim, agreed that the fire in the kerosene heater which caused Mr. Yarbrough's injuries and the destruction of the house and the Yarbroughs' personal property, was the result of using gasoline, as opposed to kerosene, in the kerosene heater.
Alfa Insurance Company and Blue Cross and Blue Shield of Alabama intervened in this action. After discovery, Sears and Toyotomi moved for a summary judgment, attaching supporting documents, including portions of the deposition of the Yarbroughs' expert, Grim; the affidavit of Dr. Harold F. Smith; and copies of the instructions, warnings, and decals explicitly warning and instructing users not to use gasoline in the kerosene heater.
In opposition to the motion for summary judgment, the Yarbroughs filed an affidavit of Grim, which the trial court struck on motion of Sears and Toyotomi. The trial court entered a final summary judgment for Sears and Toyotomi on all of the Yarbroughs' claims and on the claims of Alfa and Blue Cross. Alfa and Blue Cross did not appeal. The Yarbroughs appeal, presenting the following issues:
 1. Did the trial court err in striking portions of the affidavit of the plaintiffs' expert, Frederick E. Grim?
 2. Did the Yarbroughs fail to present substantial evidence to establish liability pursuant to the Alabama Extended Manufacturer's Liability Doctrine?
 3. Did the Yarbroughs fail to present substantial evidence that Sears and Toyotomi were liable for negligence, wantonness, or breach of implied warranty of merchantability?
In granting Sears and Toyotomi's motion to strike Grim's affidavit, the trial court held that "affidavits given in litigation which contradict prior, sworn deposition testimony of the affiant may not be considered to create a genuine issue of material fact." Because the rule precluding inconsistent testimony from establishing a genuine issue of material fact applies only to the testimony of parties, not to the testimony of witnesses, Tittle v. Alabama Power Co.,570 So.2d 601 (Ala. 1990), we need not address whether Grim's affidavit is inconsistent with his deposition testimony.
 "[T]o date this Court has applied the rule stated in [Robinson v. Hank Roberts, Inc., 514 So.2d 958
(Ala. 1987), and Lady Corinne Trawlers v. Zurich Ins. Co., 507 So.2d 915 (Ala. 1987), which precludes the creation of genuine issues of material fact from inconsistent testimony,] only to parties, recognizing the motivation they might have to fabricate a sham affidavit. There is no reason to assume that disinterested third parties possess the same motive, and thus, the logic that supports the application of the rule to parties is not present."
570 So.2d at 604.
Like the affiant in Tittle, Grim was not a party and had no motive to fabricate an issue. Grim was simply an expert witness; although compensated by the Yarbroughs to testify, he was disinterested. Because Grim was not a party, the rule precluding one from creating genuine issues of material fact by contradictory or inconsistent testimony does not apply to him; therefore, the trial court erroneously struck his affidavit.
Nonetheless, even considering Grim's affidavit, we must conclude that the Yarbroughs failed to present substantial evidence creating a genuine issue of material fact as to whether the defendants might be liable under the AEMLD.
In adopting the AEMLD, the Court defined a defective product as a product that *Page 481 
is "unreasonably dangerous, i.e., not fit for its intended purpose," and said: "[T]he important factor is whether [the product] is safe or dangerous when the product is used as it was intended to be used. However, danger may be obviated byadequate warning." (Emphasis added.) Casrell v. AltecIndustries, Inc., 335 So.2d 128, 133 (Ala. 1976); Atkins v.American Motors Corp., 335 So.2d 134 (Ala. 1976). A manufacturer is not an insurer against all harm that might be caused by the use of its product, nor is a manufacturer obligated to produce an accident-proof or injury-proof product; and the mere fact that someone is injured while using the product does not establish that the product was unreasonably dangerous when put to its intended use. See Brooks v. ColonialChevrolet-Buick, Inc., 579 So.2d 1328 (Ala. 1991).
The heater at issue was designed to be fueled with only kerosene. When it is used properly — that is, fueled with kerosene — it meets an ordinary consumer's expectation by heating the house. However, if the consumer improperly uses gasoline in the kerosene heater, an obvious hazard is created because of the inherent volatility of gasoline. This potential hazard was identified in the nine warnings, cautions, and instructions contained within the "Owner's Manual," the "Safety Tips" brochure, the labels, decals, instructions, and hang tag that accompanied the heater:
"WARNING
"RISK OF EXPLOSION
 "1. Never use any fuel other than water-clear kerosene (ASTM No. 1-K kerosene). Never use gasoline. Use of gasoline can lead to uncontrollable flames resulting in destructive fire. Even kerosene contaminated with small amounts of gasoline, or similarly volatile materials, can be hazardous. Never use a can for kerosene that has previously been used for gasoline, paint thinner, or solvents.
". . . .
"WARNING
"RISK OF BURNS OR FIRE
". . . .
 "4. To avoid possible burns or fire, do not move, refuel or attempt to service your heater while it is burning or still hot. If the heater is dropped while it is burning, fuel spillage and flames outside the heater may occur.
". . . .
"CAUTION
 "Flames observed emerging from the heater body are a clear indication that fuel is dangerously contaminated with gasoline or other highly flammable material. If this occurs,
"a. Never attempt to move the heater.
"b. Call the Fire Department."
A label included on the side of the fuel tank on the kerosene heater read in pertinent part as follows: *Page 482 
"DANGER
 "Risk of explosion. Never use gasoline or other inflammable liquids in this heater. Use only water-clear . . . kerosene."
These warnings, included with the kerosene heater, were specific, comprehensive, and detailed in notifying potential consumers of the possibility of the danger associated with the use of gasoline or gasoline-contaminated kerosene as fuel for the heater. These warnings, which Mr. Yarbrough read, not only warned against the use of gasoline in the heater, but also provided details as to why gasoline should not be used as fuel for the heater and warned against moving the heater while it was in operation or if flames emerged from the heater.
These detailed, specific, and comprehensive warnings distinguish this case from Bean v. BIC Corp., 597 So.2d 1350
(Ala. 1992), wherein the Court held that the defendant, BIC Corporation, had failed to show the absence of a genuine issue of material fact where the allegation was that its general warnings "KEEP OUT OF REACH OF CHILDREN" and "KEEP AWAY FROM CHILDREN" failed to warn of the dangers associated with a child's use of a lighter.
We note the Yarbroughs' allegation that the barometric feed system used in the kerosene heater was defective and that there was an alternative, safer device. Other than the general statement by Grim, the Yarbroughs' expert witness, that "[t]here is a simple design modification to this heater which could have signalled misfueling and provided warning and/or turned off the heater before it flared out of control," the record is devoid of any proof of the existence of a feasible, available alternative to the design presently used in the heater that would have averted the danger presented by the heater. There was no detail or explanation provided; there was no evidence to prove that "a simple design modification" was safer or more practical or would have reduced or prevented the Yarbroughs' injuries and loss; and there was no evidence to show that the utility of an alternative design outweighed the utility of the design actually used. See General Motors Corp. v. Edwards,482 So.2d 1176 (Ala. 1985); Beech v. Outboard Marine Corp., 584 So.2d 447
(Ala. 1991). Moreover, Grim stated that an alternative to the barometric feed design would not have eliminated or reduced the chances of this accident, because the accident and subsequent injuries were caused by the use of gasoline or gasoline-contaminated fuel.
Based on the foregoing, we conclude that the trial court properly entered the summary judgment for Sears and Toyotomi as to the Yarbroughs' AEMLD claim.
The Yarbroughs support their claims of negligent and wanton design and failure to warn by the same evidence used to support their AEMLD claim. Suffice it to say, without further discussion, that the Yarbroughs presented no evidence of negligent design and no evidence of wanton design. Rather, the evidence clearly establishes that the damage to the Yarbroughs' house and personal belongings and the injuries to Mr. Yarbrough were caused by Mr. Yarbrough's misuse of the product.
Furthermore, as this Court stated in Gurley v. American HondaMotor Co., 505 So.2d 358, 361 (Ala. 1987):
 "A negligent-failure-to-adequately-warn case cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and would have kept the accident from occurring."
It is undisputed that Mr. Yarbrough, the user of the kerosene heater, read the instructions and warnings before he operated it. However, based on his own actions on the day of the fire, one must conclude that he failed to heed the clear, specific warnings and instructions that if he saw flames coming out *Page 483 
of the heater (which meant that gasoline-contaminated fuel had been used) he was not to move the heater but was to call the fire department. Rather, on the day of the fire, when he saw flames coming from the heater, he tried to pick up the heater by its handles and carry it. There was no evidence that any other warning or instruction would have been heeded and thereby would have prevented the accident.
Based on the foregoing, we conclude that the trial court properly entered the summary judgment for Sears and Toyotomi as to the Yarbroughs' claims of negligent and wanton design and failure to warn.
The Yarbroughs' claim of a breach of the implied warranty of merchantability is to the effect that the kerosene heater was unreasonably dangerous and therefore could not be merchantable. "Such an argument ignores the clear distinction between causes of action arising under tort law and those arising under the U.C.C. as adopted in Alabama." Shell v. UnionOil Co., 489 So.2d 569, 571 (Ala. 1986). Whether the kerosene heater was unreasonably dangerous is not a question properly addressed in a claim alleging breach of warranty under the U.C.C., but it could be, and was, properly raised in a claim under the AEMLD.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.