Ashley CHASE and Jeffrey Chase, minors, by and through their next best friend, Teresa Chase, Plaintiffs,

v.

KAWASAKI MOTORS CORP., U.S.A., Honda/Kawasaki Sea Doo of Columbus, Inc., and Jason Dyer, Defendants.

No. CIV. A. 00–A–907–E.

United States District Court,
M.D. Alabama,
Eastern Division.

May 2, 2001.

Donald R. Harrison, Harrison & Edmondson, LLC, Dadeville, AL, Ben C. Hand, Jr., Hand & Associates, Opelika, AL, for Ashley Chase, a minor, by and through her next best friend, Teresa Chase, Jeffrey Chase, a minor, by and through his next best friend, Teresa Chase, plaintiffs.

E. Martin Bloom, C. Mark Bain, Friedman Leak & Bloom PC, Birmingham, AL, Robert K. Miller, Bowman & Brooke, Torrance, CA, H.E. Nix, Jr., Jay S. Tuley, Nix Holtsford Gilliland Lyons & Higgins PC, Montgomery, for Kawasaki Motors Corp., U.S.A., Jason Dyer, Honda/Kawasaki Sea Doo of Columbus, Inc., defendants.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on Motions for Summary Judgment filed by Defendant Kawasaki Motor Corporation., U.S.A. ("Kawasaki") on January 10, 2001 ·(doc. # 18) and by Defendants Honda/Ka-

wasaki Sea Doo of Columbus, Inc. and Jason Dyer (collectively "Honda of Columbus") on January 11, 2001 (doc. # 21). Defendant Kawasaki also filed a Request for Oral Argument on February 5, 2001 (doc. # 26).[1]

Ashley Chase and Jeffrey Chase (collectively "Plaintiffs") bring suit by their next best friend, Teresa Chase. Plaintiffs' Amended Complaint, filed on March 7, 2001 in response to this court's February 27, 2001 Order, raises claims for violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (Count One), breach of implied warranties (Count Two), violation of the Magnuson–Moss Warranty Act (Count Three), and fraudulent misrepresentation (Count IV). This court has jurisdiction over this cause pursuant to 28 U.S.C. §§ 1331 and 1367.

In ruling on each of the Motions for Summary Judgment, this court will consider all of the submissions of all of the parties.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## III. *FACTS*

The facts as presented in the submissions of the parties, viewed in a light most

---

1. The court finds that the issues presented have been discussed adequately by the parties in their briefs and that oral argument would not be helpful to a determination of the issues. Accordingly, Kawasaki's Request for Oral Argument is due to be DENIED.

favorable to the non-movants, are as follows:

On June 16, 1998, Jeffrey Rudolph Chase, Sr., ("Mr.Chase") and Teresa Chase ("Mrs.Chase") (collectively "Parents") purchased a 1998 four wheel all-terrain vehicle ("ATV") for their children, the current Plaintiffs, from Defendant Honda of Columbus. The ATV was manufactured by Defendant Kawasaki. At the time of purchase, Ashley Chase was fourteen years old and Jeffrey Rudolph Chase, Jr., ("Jeff") was twelve. It is undisputed that the particular ATV purchased by Parents for Plaintiffs was not intended to be used by children under the age of sixteen, and various warnings to that effect were provided to Parents at the time of sale. Plaintiffs claim that Defendant Jason Dyer, a salesperson for Honda of Columbus, convinced Parents to purchase the ATV despite the fact that the ATV was not meant to be used by children as young as the Plaintiffs.

On July 11, 1998, nearly a month after Parents purchased the ATV, Plaintiffs took the ATV to their friends' home. On their return trip, Ashley drove the ATV and Jeff rode as a passenger. Ashley was operating the ATV adjacent to a roadway when she observed a pothole in their path. She attempted to apply the brakes, but the ATV did not stop, and the Plaintiffs struck the pothole and overturned. Plaintiffs suffered injuries as a result of this incident.

Prior to the accident, neither Plaintiffs nor Parents read the ATV Owner's Manual which included a section relating to the maintenance and adjustment of the ATV's brakes. Plaintiffs and Defendants agree that the accident occurred because the ATV's brakes were out of adjustment. Plaintiffs claim that the brakes were out of adjustment because they were designed to fail by Kawasaki.

## IV. DISCUSSION

Defendants have moved for summary judgment on all claims included in Plaintiffs' Amended Complaint. The court will now address Defendants' various arguments supporting summary judgment.

### A. Alabama Extended Manufacturer's Liability Doctrine (Count One)

A quarter century ago, the Alabama Supreme Court enunciated the Alabama Manufacturer's Liability Doctrine (hereinafter the "AEMLD") in *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala. 1976) and *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976). In order to establish liability under the AEMLD:

(1) A plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition to which it was sold. (2) Having established the above elements, the plaintiff has proved a prima facie case although (a) the seller had exercised all possible care in the preparation and sale of his product, and (b) the user or consumer had not bought the product from or entered into any contractual relation with the seller.

*Caudle v. Patridge*, 566 So.2d 244, 247 (Ala.1990) (quoting *Atkins*, 335 So.2d at 141). This system of determining liability shifts the emphasis from the seller's conduct to the defective nature of the product. *Id.*

Count One of Plaintiffs' Amended Complaint alleges multiple claims under the AEMLD, but in response to Defendants' Motions for Summary Judgment, Plaintiffs only rely on two of those claims— a claim for design defect and a claim for failure to

warn. *See* Pls' Resp. at 4–5 ("All [AEMLD] claims carry the gravaman that the defendants either designed or sold a product which was defective because it was unreasonably dangerous or the defendants did not adequately warn the plaintiffs of such unreasonable danger."). The court will restrict the scope of its discussion, as did Plaintiffs in their Response, to those two claims. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.... Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citations omitted).

Defendants contend that any AEMLD claims made by Plaintiffs must fail because Plaintiffs have failed to show any defect in the ATV's braking system. Defendants also insist that they are due summary judgment on Plaintiffs' failure to warn claims because neither Parents nor Plaintiffs read the information provided to them concerning the maintenance and adjustment of the ATV's braking system. Plaintiffs argue that the evidence shows that the ATV was "designed to fail after 10 hours of use" and that "had there been a prominent warning on the ATV that the brakes were designed to fail after 10 hours, [Mrs. Chase] would have read it and refused to purchase [the ATV]." Pls' Response at 6 & 8.

### 1. Design Defect

 As another judge in this district has recently noted, Alabama case law requires an AEMLD plaintiff to come forward with, among other things, at least some evidence to support an inference that the product in question was defective. *Rudd v. General Motors Corp.*, 127 F.Supp.2d 1330, 1345 (M.D.Ala.2001) (Thompson, J.). Mere proof of an accident with ensuing injuries is insufficient to establish AEMLD fault because "the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition." *Jordan v. General Motors Corp.*, 581 So.2d 835, 836–37 (Ala.1991).

The court has combed the record for evidence of defect in this case, but has found none. All that the Plaintiffs have offered relating to the issue of defectiveness are unsubstantiated legal conclusions. Plaintiffs' theory is that an ATV with brakes designed to fail after 10 hours of use is defective and unreasonably dangerous. In support of this theory, Plaintiffs submit the affidavit of Jim Morton, a mechanical and design consultant. In his affidavit, Mr. Morton states, "[i]t ·is unreasonably dangerous to design and build a brake system that is designed to fail to stop the vehicle after 10 hours and to not provide a means or manner to accurately measure those 10 hours." Morton Aff. at ¶ 6 (Exh. L attached to Plaintiffs' Resp.). Significantly, Mr. Morton does not even state that this particular ATV was so designed. Assuming his statement to be true, there is nothing in the record which suggests the Plaintiffs' ATV was designed to fail.[2] The Owner's Manual that was given to Parents at the time of purchase does have a section titled "MAINTENANCE AND ADJUSTMENT" which instructs that the ATV's brakes should be cleaned and adjusted after the first 10 hours of use. Exh. H (attached to Kawasaki's Motion for Summary Judgment). Apparently, this is where Plaintiffs' "designed to fail" theory was born. In the

---

**2.** It is worth noting that in a letter dated October 16, 1998, Mr. Morton also stated that the brakes on the Plaintiffs' ATV "aren't defective, they are just out of adjustment." Exh. I (attached to Kawasaki's Motion for Summary Judgment).

absence of evidence supporting Plaintiffs' allegations regarding defect, an essential element of Plaintiffs' *prima facie* case under the AEMLD, summary judgment is due to be granted Defendants on this claim. *See Brooks v. Colonial Chevrolet–Buick, Inc.*, 579 So.2d 1328, 1333 (Ala. 1991).

### 2. *Failure to Warn*

 Under the AEMLD, where a duty to warn is imposed by law on a manufacturer or seller, a product sold without an adequate warning is "defective." *Rudd*, 127 F.Supp.2d at 1346. To prevail on their failure to warn claim under the AEMLD, Plaintiffs must show that: "(1) the defendant[s] [were] under a duty to warn the [Plaintiffs] regarding the product-in-question's danger when used in its intended or customary manner, (2) the warning the defendant[s] provided breached that duty because it was inadequate, and (3) the breach proximately caused the [Plaintiffs'] injuries." *Campbell v. Robert Bosch Power Tool Corp.*, 795 F.Supp. 1093, 1097 (M.D.Ala.1992) (Thompson, J.). For purposes of summary judgment, Defendants challenge Plaintiffs' ability to prove the causation element of Plaintiffs' failure to warn claim.

The braking system on the ATV in question requires frequent inspection and preventative maintenance. The "Maintenance and Adjustment" section of the Owner's Manual furnished with the ATV provides for service and adjustment of the brakes after the first 10 hours of use. *See* Exh. D at 78 (attached to Honda of Columbus' Motion for Summary Judgment). After the initial 10 hour service, the Owner's Manual states that the brakes should be checked after every 10 days of use. *Id.* The same manual indicates that "[f]ailure to follow the warnings contained in this manual can result in SERIOUS INJURY OR DEATH." *Id.* at p. 2. One of several conspicuous warnings notes that it is a "HAZARD" to fail to properly maintain and inspect the ATV. *Id.* at 43.[3] Again, it is undisputed that neither Parents nor Plaintiffs read the Owner's Manual prior to the accident. Pls' Response at 3.

 Assuming for the sake of discussion that the warnings provided by Defendants in the Owners Manual were inadequate, to survive summary judgment on these claims, Plaintiffs still must come forward with some evidence that Defendants' inadequate warnings proximately caused Plaintiffs' injuries. *E.R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963, 970 (Ala.1985). A " . . . failure-to-adequately-warn case cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and would have kept the accident from occurring." *Yarbrough v. Sears, Roebuck & Co.*, 628 So.2d 478, 482 (Ala.1993) (citing *Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala.1987)).

 There is no such evidence in the record. All the Plaintiffs offer is the deposition testimony of Mrs. Chase which indicates that she might not have purchased the vehicle for Plaintiffs if she had known about the maintenance requirements for the ATV. Mrs. Chase Dep. at 163–165 (Exh. B attached to Pls' Resp.). Yet it is undisputed that neither Parents nor Plaintiffs read the Owner's Manual before the accident. Defendants' presumed inadequate warning, therefore, did not cause

---

**3.** The ATV Safety Alert provided at the time of purchase also states:

TO AVOID DEATH OR SEVERE PERSONAL INJURY: *ALWAYS* READ THE OWNER'S MANUAL CAREFULLY AND FOLLOW THE OPERATING PROCEDURES DESCRIBED. PAY SPECIAL ATTENTION TO THE WARNINGS CONTAINED IN THE MANUAL AND ON ALL LABELS.
Exh. C (attached to Kawasaki's Motion for Summary Judgment).

Plaintiffs' injuries. Because Alabama law bars a plaintiff who does not read an allegedly inadequate warning from maintaining a failure to warn action, summary judgment is due Defendants on this claim.[4] *E.R. Squibb & Sons, Inc.,* 477 So.2d at 971.

### B. *Breach of Implied Warranties* (Count Two)

Alabama's version of the U.C.C. provides for both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. An implied warranty of merchantability arises in a contract for the sale of goods where the seller is a merchant with respect to the goods he is selling. *See Ala.Code* § 7–2–314 (1997). An implied warranty of fitness for a particular purpose arises when the seller, at the time of contracting, has reason to know any particular purpose to which the buyer wishes to put the product, and also knows that the buyer is relying on the seller's expertise in selecting a suitable product for the buyer. *See Ala.Code* § 7–2–315 (1997). Plaintiffs allege violation of both implied warranties.

Defendants claim that the ATV sold to Parents and used by Plaintiffs conforms with the requirements of *Ala.Code* § 7–2–314 and that the Plaintiffs have failed to present evidence supporting Defendants' alleged breach of any implied warranties. With regard to the issue of the implied warranty of fitness for a particular purpose, Honda of Columbus argues that it is due summary judgment because Plaintiffs cannot prove reliance. In the alternative, Honda of Columbus contends that any such implied warranty was properly disclaimed in the bill of sale. Plaintiffs respond to Defendants by arguing that the

ATV could not have been merchantable because its brakes were "designed to fail." Pls. Resp. at 9. Additionally, Plaintiffs suggest that Defendants violated their implied warranties of fitness for a particular purpose because Jason Dyer persuaded Parents to purchase the ATV for the use of Plaintiffs.

#### 1. *Implied Warranty of Merchantability*

 For goods to be merchantable under section 7–2–314 of the Alabama Code they must be, *inter alia,* "fit for the ordinary purposes for which such goods are used." *Id.; Ex parte General Motors Corp.* ., 769 So.2d 903, 912 (Ala.1999). To make out a claim for breach of the implied warranty of merchantability, a plaintiff must show proof of (1) the existence of the implied warranty; (2) breach of that warranty; and (3) damages proximately resulting therefrom. *Id.* (citations omitted).

 There is simply no evidence in the record that Defendants breached any implied warranty of merchantability owed to Plaintiffs. All that Plaintiffs have offered relating to the merchantability of the ATV, besides a plethora of allegations, is Jim Morton's affidavit. Viewing the evidence in a light most favorable to Plaintiffs, the court reads Mr. Morton's affidavit as expressing the opinion that the designing of brakes intended to fail after 10 hours of use would constitute a breach of the implied warranty of merchantability. Assuming this statement to be true, there is no evidence in the record indicating that Defendants did design the brakes on Plaintiffs' ATV to fail after 10 hours of use. Because Plaintiffs have failed to link Mr. Morton's assertion to any evidence of breach, summary judgment is due Defendants.[5]

---

**4.** There is an exception to this rule in cases where the nature of the warning's alleged inadequacy is such that it prevents a plaintiff from reading the warning. *See E.R. Squibb & Sons, Inc.,* 477 So.2d at 971 (Ala.1985).

There is no evidence that this case should fall outside the operation of the general rule.

**5.** Summary disposition of this claim for the reasons stated in reference to Plaintiffs'

### 2. *Implied Warranty of Fitness for a Particular Purpose*

The implied warranty of fitness for a particular purpose is "narrower, more specific, and more precise" than the implied warranty of merchantability. 1 James J. White & Robert S. Summers, Uniform Commercial Code: Practitioner Treatise Series § 9–10 (4th ed.1995). Section 7–2–315 of the Alabama Code states:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7–2–316 an implied warranty that the goods shall be fit for such purpose.

*Id.*

Thus, where there has been no valid modification or exclusion, the warranty will be implied if: (1) The seller has reason to know the buyer's particular purpose; and (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment. *Donald v. City National Bank of Dothan*, 295 Ala. 320, 329 So.2d 92, 95 (1976) (citation omitted). In an action for breach of the implied warranty of fitness for a particular purpose, the Plaintiffs must prove: (1) the existence of the implied warranty; (2) breach of the implied warranty; and (3) damages proximately resulting from that breach. *Barrington Corp. v. Patrick Lumber Co., Inc.*, 447 So.2d 785, 787 (Ala. Civ.App.1984).

As mentioned *supra*, the only evidence Plaintiffs proffer in support of their section 7–2–315 claims relates to alleged representations made by Jason Dyer in his capacity as a salesperson for Honda of Columbus. Under Alabama law, these representations cannot bind Kawasaki if Honda of Columbus is not an agent of Kawasaki. *See McLemore v. Ford Motor Co.*, 628 So.2d 548, 551 (Ala.1993). Whether an express agency relationship exists depends on whether there is evidence of a retained right of control by the principal over the agent. *Id.* (citing *John R. Cowley & Bros., Inc. v. Brown*, 569 So.2d 375, 381 (Ala.1990)). An agency relationship may not be presumed. *Battles v. Ford Motor Credit Co.*, 597 So.2d 688, 689 (Ala.1992).

The uncontradicted evidence before this court is that Honda of Columbus is an independent retail dealer and not an agent of Kawasaki. Koprowski Aff. (Exh. J attached to Kawasaki's Motion for Summary Judgment). Therefore, Kawasaki is not "the seller" who contracted with Parents for purposes of section 7–2–315. Honda of Columbus sold the ATV to Parents. Any

AEMLD claims is also appropriate, given the Alabama Supreme Court's decision in *Yarbrough v. Sears, Roebuck & Co.*, 628 So.2d 478 (Ala.1993) and the Eleventh Circuit's decision in *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300 (11th Cir.2000). In *Yarbrough*, the Alabama Supreme Court found that the plaintiffs' claims for breach of the implied warranty of merchantability, which were couched in terms of strict liability, were properly raised under the AEMLD and not the U.C.C. *Id.* at 483; *see also Shell v. Union Oil Co.*, 489 So.2d 569, 570–72 (Ala. 1986). In *Spain*, the plaintiff's complaint alleged that cigarettes were an "unreasonably dangerous" product and, therefore, not merchantable. *Id.* at 1310. The Eleventh Circuit held that the plaintiff could not state a claim for breach of the implied warranty of merchantability given Alabama case law. *Id.* 1310–1311. Here, as in *Yarbrough*, Plaintiffs' merchantability claims are based on allegations of "unreasonably dangerous" products. The court reads *Yarbrough* and *Spain* as requiring Plaintiffs to raise these type claims under the AEMLD and not Alabama's version of the U.C.C. *Cf. Allen v. Delchamps, Inc.*, 624 So.2d 1065, 1068 (Ala.1993) (applying different rule in case involving allegedly defective food products).

representations made by Honda of Columbus or its agent do not bind Kawasaki. Moreover, any information conveyed by Parents to Honda of Columbus or its agent as to the particular purpose to which the ATV would be put cannot be deemed to have been submitted to Kawasaki in the absence of an agency relationship.[6] Accordingly, Kawasaki is due summary judgment on Plaintiffs' claims for breach of the implied warranty of fitness for a particular purpose because there is no evidence that Honda of Columbus had the authority to bind Kawasaki. *Wood v. Shell Oil Co.*, 495 So.2d 1034, 1038 (Ala.1986).

 As for Honda of Columbus, the court also finds that summary judgment is appropriate as to this claim. There is evidence in the record which, viewed in the light most favorable to the Plaintiffs, indicates that Mrs. Chase relied on Jason Dyer's representations regarding the suitability of the ATV for Plaintiffs in reaching her decision to purchase the ATV from Honda of Columbus. *See* Mrs. Chase Dep. at 23–24 (Exh. B attached to Pls' Resp.).[7] However, Plaintiffs have proffered no evidence that their injuries were proximately caused by Honda of Columbus' breach of its implied warranty of fitness for a particular purpose.

It is Plaintiffs' contention that Mrs. Chase only purchased the ATV because Honda of Columbus, by its agent Jason Dyer, represented that the ATV was suitable for children of the Plaintiffs' ages. Based on Plaintiffs' theory, the implied warranty of fitness was breached because the ATV was not in fact suitable for Plaintiffs. While Plaintiff has presented sufficient evidence of the existence of the implied warranty of fitness and, arguably, breach of that warranty, there has been no evidence presented which demonstrates that Plaintiffs' injuries where proximately caused by Honda of Columbus' breach of this implied warranty of fitness.

The record only indicates that the Plaintiffs wrecked the ATV after the brake system did not respond to Ashley's suppression of the hand-brakes. There is no evidence at all which suggests that the accident involving the ATV was age-related. Indeed, the record before this court shows that any person who was driving this particular ATV on that day, whether twelve, fourteen, fifty-five, or seventy, would have been injured when the braking system did not engage. To make out their prima facie case against Honda of Columbus for breach of the implied warranty of fitness, Plaintiffs must be able to link the

---

**6.** The information which Kawasaki did provide Parents clearly indicated that the ATV in question was not to be used by children under the age of 16. Therefore, in purchasing the ATV for Plaintiffs, Parents certainly were not relying on Kawasaki's skill or judgment in selecting or furnishing a suitable ATV.

**7.** Under *Ala.Code* § 7-2-318 (1997), Plaintiffs have standing to bring a direct action based on the alleged representations made to Mrs. Chase because Plaintiffs are third party beneficiaries of any warranty, express or implied, made by Honda of Columbus to Mrs. Chase. Moreover, there is no requirement in the Alabama Code that Plaintiffs must prove that they themselves relied on the alleged implied warranty of fitness for a particular purpose

made to Mrs. Chase because a warranty beneficiary under section 7-2-318 is not a "buyer." *See Simmons v. Clemco Industries*, 368 So.2d 509, 513 (Ala.1979) (holding that a section 7-2-318 warranty beneficiary is not a "buyer" under Alabama's version of the Uniform Commercial Code); *see also Ala.Code* § 7-2-315 (requiring, among other things, the "buyer" to rely on the seller's skill or judgment in selecting or furnishing suitable goods to make out a claim for breach of the implied warranty of fitness for a particular purpose). Thus, Plaintiffs can satisfy the reliance element of this claim by proving reliance on the part of their mother, the buyer, without having to prove that they themselves relied upon the seller's skill and judgment.

Plaintiffs' young ages to their accident related injuries sufficiently to establish proximate causation. They have failed to do so. Accordingly, since on the evidence before the court a reasonable jury could not find that the Plaintiffs' injuries proximately resulted from the alleged breach, Honda of Columbus is due summary judgment on this claim.

### C. *Magnuson–Moss Warranty Act* (Count Three)

■ Under the Magnuson–Moss Warranty Act ("the Act"), a consumer who is damaged by a supplier's failure to comply with an implied warranty may bring suit in federal court for damages and other legal and equitable relief. 15 U.S.C. § 2310(d). In defining "implied warranty," the Act looks to state law. 15 U.S.C. § 2301(7). Therefore, section 2310(d) essentially provides a federal cause of action for breach of an implied warranty which arises under state law.

■ Because Plaintiffs' federal claims simply duplicate their state law implied warranty claims, summary judgment is due Kawasaki and Honda of Columbus on all such claims. *See supra.*

### D. *Fraudulent Misrepresentation* (Count Four)

■ Under Alabama law, regardless of whether the representation was made willfully, recklessly, or mistakenly, a plaintiff alleging fraudulent misrepresentation must prove four elements: (1) a false representation; (2) that the false representation concerned a material existing fact;

(3) that the plaintiff relied on the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance. *See Ala.Code* § 6–5–101; *George v. Associated Doctors Health & Life Ins. Co.,* 675 So.2d 860, 862 (Ala.1996).[8] In response to Defendants' Motions for Summary Judgment as they relate to Count Four, Plaintiffs rely on the deposition testimony of Mrs. Chase in which she states that Jason Dyer and others at Honda of Columbus represented to her that the Plaintiffs would be safe on the ATV in question despite the various manufacturer's warnings against the use of such an ATV by those younger than age sixteen. Mrs. Chase Dep. at 23–24 (Exh. B attached to Pls' Resp.). Plaintiffs also rely on Mr. Chase's deposition testimony relating to alleged misrepresentations made to him by a Honda of Columbus mechanic. Mr. Chase Dep. at 32 (Exh. A attached to Honda of Columbus' Motion for Summary Judgment). Defendants contend that Parents' and Plaintiffs' reliance on such statements, assuming they were even made, was unreasonable as a matter of law. *See Foremost Ins. Co. v. Parham,* 693 So.2d 409, 420–21 (Ala.1997) (holding that to succeed on a fraud claim in Alabama, a plaintiff's reliance must be reasonable). Additionally, Kawasaki argues that it is not bound by any such statements because Honda of Columbus and its employees are not agents of Kawasaki. Plaintiffs insist that Jason Dyer had apparent authority to act for Kawasaki.

---

8. The court notes that under Alabama law it is not always required that a plaintiff prove that a misrepresentation was made directly to him, so long as his injuries resulted from the misrepresentation. *Thomas v. Halstead,* 605 So.2d 1181, 1184 (Ala.1992) ("If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place") (citations omitted). Therefore, "[t]here is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation." *Wheelan v. Sessions,* 50 F.Supp.2d 1168, 1174 (M.D.Ala. 1999) (DeMent, J.) (quoting *Colonial Bank of Ala. v. Ridley & Schweigert,* 551 So.2d 390, 396 (Ala.1989)).

The court has already concluded that the uncontradicted evidence demonstrates that Jason Dyer was not an actual agent of Kawasaki at the time the ATV was sold to Parents. Nevertheless, under the doctrine of apparent authority, it might still be possible for Kawasaki to be held responsible for Jason Dyer's representations. "Apparent authority" is such authority as a principal knowingly permits an agent to assume or holds him out as possessing. *Glass v.. Southern Wrecker Sales*, 990 F.Supp. 1344, 1353 (M.D.Ala. 1998) (citation omitted), *aff'd*, 163 F.3d 1361 (11th Cir.1998) (unpublished table decision). The doctrine of apparent authority is based on the actions of the principal and not those of the purported agent. *Id.* "[I]t is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be." *Malmberg v. American Honda Motor Co., Inc.*, 644 So.2d 888, 891 (Ala. 1994).

In support of their argument that Jason Dyer was an apparent agent for Kawasaki, Plaintiffs reference several documents and brochures which Jason Dyer provided to Parents on behalf of Kawasaki and one letter sent directly from Kawasaki to Parents. These materials include an ATV Rider Training Certificate, a Certificate of Origin for a Vehicle, an ATV Safety Alert, a letter received directly by Parents from Kawasaki congratulating them on their purchase and providing them with warranty information, and the Owner's Manual. *See* Attachments to Pls' Resp. The court has reviewed these materials and concluded that they do not in any way tend to show that Kawasaki held Jason Dyer out to Parents as possessing any authority to act for Kawasaki. If anything, the various materials cited by Plaintiffs highlight the fact that Jason Dyer was not an agent of Kawasaki and did not have apparent authority to act for Kawasaki in allegedly persuading Parents to buy the ATV for Plaintiffs. For example, both the ATV Rider Training Certificate, which Mrs. Chase signed and Mr. Chase initialed, and the ATV Safety Alert provide in very precise and eye-catching language that Kawasaki's position is that children under the age of sixteen should not operate ATVs like the one in question. *Id.*

The court also relies on the Alabama Supreme Court's decision in *Malmberg v. American Honda Motor Co., Inc.*, 644 So.2d 888, 891 (Ala.1994), which held that evidence that a manufacturer's logos were displayed upon "signs, literature, products, brochures, and plaques" in a retailer's place of business was insufficient, in itself, to create an inference of agency. The only evidence Plaintiffs' proffer on the subject of apparent agency is exactly the type of logo evidence which the Alabama Supreme Court found to be inadequate in *Malmberg*. The materials submitted by Plaintiffs only show that Honda of Columbus sold products manufactured by Kawasaki. This evidence is insufficient to subject a manufacturer to liability for an independent retailer's allegedly fraudulent statements. *Wood v. Shell Oil Co.*, 495 So.2d 1034, 1038 (Ala.1986). Accordingly, summary judgment is due to be granted Kawasaki on Plaintiffs' fraudulent misrepresentation claims.

Honda of Columbus contends that Plaintiffs' fraudulent misrepresentation claims must fail because neither Parents nor Plaintiffs can prove that they reasonably relied on any alleged misrepresentations made by employees of Honda of Columbus. Plaintiffs do not respond to this argument.

The alleged fraudulent representations by agents of Honda of Columbus were made to Parents and not to Plaintiffs. As discussed previously, the general rule is that the deceit must be practiced directly

on the person injured. *Thomas v. Halstead*, 605 So.2d 1181, 1184 (Ala.1992). The Supreme Court of Alabama has expanded this rule by allowing a person injured indirectly by a deceit, under some circumstances, to sue the party who made the misrepresentation. *Id.* at 1184–85.

Plaintiffs, as Parents' children and the obvious end-users of the ATV, might appear to fit comfortably within the expanded rule. However, although the cases have found that the misrepresentation does not have to be made directly to the injured party, they have never gone so far as to say that the injured party does not have to prove reliance on his or her part on the alleged misrepresentation. In fact, the entire basis for third party standing in misrepresentation cases is that the deceiver contemplated that the third party would be induced to act by the deceiver's misstatements made to someone else. *Sims v. Tigrett*, 229 Ala. 486, 158 So. 326, 330 (1934). Therefore, reliance on the part of the injured party must be proved.[9] *See generally*, Restatement (Second) of Torts § 533; 37 Am.Jur.2d § 298 (1968); William L. Prosser, Misrepresentation and Third Persons, 19 Vand. L.Rev. 231 (1966).

Plaintiffs have failed to come forward with any evidence that they themselves relied upon the alleged fraudulent representations made by Honda of Columbus to Parents. Without some evidence of reliance, Plaintiffs cannot make out their prima facie case for fraudulent misrepresentation. *Cf. Wheelan v. Sessions*, 50 F.Supp.2d 1168, 1174 (M.D.Ala.1999) (denying defendants summary judgment on misrepresentation claim brought by woman who presented evidence that she personally relied to her injury on misrepresentations made by defendant to her husband). Accordingly, summary judgment is due Honda of Columbus on Count Four.

## V. CONCLUSION

For the reasons discussed, the court concludes that Kawasaki's Motion for Summary Judgment is due to be GRANTED. Honda of Columbus' Motion for Summary Judgment is also due to be GRANTED. Kawasaki's Request for Oral Argument is due to be DENIED. A separate Order will issue with this Memorandum Opinion.

---

9. The fact that Plaintiffs are young children, possibly incapable of reliance, makes no difference— that simply means that Plaintiffs may have other bases for a claim, but not a claim based on fraudulent misrepresentation where there is no evidence of reliance on the part of the Plaintiffs. *Compare Opinion* at IV(B)(2) n. 7 (noting that Plaintiffs are not required by Alabama law to prove their own reliance to make out a claim for breach of the implied warranty of fitness for a particular purpose).