[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1084 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1085 
The defendants below, DaimlerChrysler Corporation ("DaimlerChrysler") and Pierson Chevrolet, Inc. ("Pierson") (collectively "the petitioners"), petition for a writ of mandamus directing Judge William H. Rhea III of the Etowah Circuit Court to dismiss the underlying action so that it may be refiled in the appropriate court in Utah County, Utah. We grant the petition and issue the writ.
 Facts and Procedural History
On December 24, 1996, Annette Walker purchased a 1997 Jeep Wrangler sport-utility vehicle from Pierson in Etowah County. On October 12, 2002, Walker's 18-year-old son, John Christopher Walker, a student at Brigham Young University in Provo, Utah, was driving the Jeep on Interstate 15 in Utah County, Utah. At approximately 2:00 a.m., John was involved in a single-vehicle accident. Witness testimony indicated that the Jeep suddenly crossed lanes of the highway and left the road; the Jeep flipped several times and came to a rest upside down. John was pinned underneath, and he died at the scene as a result of injuries sustained in the accident. The materials before us assert that John had consumed alcohol earlier on the night of the accident.
Annette was named administrator of John's estate. On September 13, 2004, Annette sued DaimlerChrysler, Pierson, and several fictitiously named defendants in the Etowah Circuit Court. The complaint sought damages under Utah law against all of the defendants based on theories of strict liability, negligent or wanton failure to warn, and wrongful death. The complaint alleged, among other things, that the roll bar of the Jeep failed when the Jeep flipped, which in turn slackened *Page 1086 
the seat belt and allowed John to become unrestrained during the crash. The complaint also sought damages under Alabama law against all of the defendants for breach of warranty and against Pierson for negligent or intentional misrepresentation.
On March 23, 2005, the petitioners filed a motion titled "defendants' joint motion to dismiss in order to transfer," which sought a dismissal of the claims invoking Utah law under the doctrine of forum non conveniens so that the case could be refiled in Utah County. The motion included numerous evidentiary exhibits, a narrative summary of the facts, and a supporting brief. Additionally, the motion included a document in which both DaimlerChrysler and Pierson agreed to submit themselves to the jurisdiction of the "Circuit Court" for Utah County, Utah, and waived any defense based on statute of limitations if the action was filed in Utah County, Utah, within 60 days after its dismissal in the Etowah Circuit Court.
The petitioners also filed a motion to dismiss Annette's misrepresentation claim against Pierson. The petitioners argued in their motion that Annette's misrepresentation claim was due to be dismissed because: (1) a misrepresentation claim cannot survive in favor of a personal representative, and (2) the action could not be maintained because no misrepresentations had been made to John. As to the second issue, the motion stressed that Annette's complaint alleged that the misrepresentations "weremade to her for the purpose of inducing her to purchase the vehicle." The motion further stated: "Here, by [Annette's] own admission, no representations by Pierson which could have been relied on were made to [John]. . . . Rather,all representations were made to [Annette]."
Annette filed a response to both motions to dismiss. She did not attempt to amend the complaint or the count alleging misrepresentation. The trial court denied both motions in an order drafted by Annette's counsel and filed in the clerk's office on August 8, 2005. On August 30, 2005, the trial court certified that, pursuant to Rule 5, Ala. R.App. P., the issues whether the misrepresentation claim against Pierson survived John's death and whether an action could be maintained even though no misrepresentations were made to John involved controlling questions of law suitable for an immediate permissive appeal. The petitioners timely filed both this petition for the writ of mandamus and a petition for permission to appeal to this Court under Rule 5. We denied the petition for permission to appeal (No. 1041862, Oct. 20, 2005), but ordered answer and briefs in response to the petition for the writ of mandamus.
 Standard of Review
A petition for a writ of mandamus is the proper method for challenging a ruling denying a motion to transfer for forumnon conveniens reasons. Ex parte Integon Corp.,672 So.2d 497, 499 (Ala. 1995). "A writ of mandamus . . . is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte BOC Group, Inc.,823 So.2d 1270, 1272 (Ala. 2001). This Court reviews mandamus petitions seeking review of a ruling on a motion to transfer based on forum non conveniens by asking *Page 1087 
whether the trial court exceeded its discretion in granting or denying the motion. Malsch v. Bell Helicopter Textron,Inc., 916 So.2d 600, 603 (Ala. 2005); see also Ex parteKia Motors America, Inc., 881 So.2d 396 (Ala. 2003).
 Discussion
The petitioners argue that this action is due to be dismissed under the doctrine of forum non conveniens codified at Ala. Code 1975, § 6-5-430, so that the action can be refiled in Utah County, Utah. Section 6-5-430 provides:
 "Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. Such dismissal may be conditioned upon the defendant or defendants filing with the court a consent (i) to submit to jurisdiction in the identified forum, or (ii) to waive any defense based upon a statute of limitations if an action on the same cause of action is commenced in the identified forum within 60 days of the dismissal."
"The purpose of the doctrine of forum non conveniens is to `prevent the waste of time, energy, and money and also to protect witnesses, litigants, and the public against unnecessary expense and inconvenience.'" Ex parte Perfection Siding, Inc.,882 So.2d 307, 312 (Ala. 2003) (quoting Ex parte New EnglandMut. Life Ins. Co., 663 So.2d 952, 956 (Ala. 1995)). Under § 6-5-430 a trial court must dismiss an action without prejudice "if, upon motion of a defendant, it is shown that there exists a more appropriate forum outside the state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice. . . ." Ex parte Prudential Ins. Co. ofAmerica, 721 So.2d 1135, 1138 (Ala. 1998).
The operation of § 6-5-430 is illustrated in this Court's recent decision in Ex parte Kia Motors America, Inc.,881 So.2d 396 (Ala. 2003). In Kia Motors, Marilyn Elise Jeffreys, Danielle Jeffreys, Justin Valieres, and Christopher Allen Durden, all residents of Jackson County, Florida, were riding in a 1998 Kia Sephia automobile when they were involved in a high-speed crash with another vehicle in Jackson County, Florida. The Sephia left the roadway, came to rest in a pasture, where it caught fire and burned. Danielle Jeffreys was the only occupant to survive the accident.
The representatives of the estates of the decedents subsequently filed an action in the Houston Circuit Court against the manufacturers of the Sephia, all of which headquartered outside Alabama (collectively "Kia"), and against Emerald Auto Sales, Inc. ("Emerald"), an automobile dealership located in Houston County, Alabama, where the Sephia had been purchased. The plaintiffs alleged various theories of *Page 1088 
product liability, breach of warranty, and negligence and wantonness as to Kia and product liability and breach of warranty as to Emerald.
Kia and Emerald filed motions to dismiss the Alabama action under § 6-5-430 so that it could be refiled in Jackson County, Florida. Kia and Emerald argued that because the plaintiffs were residents of Florida, because the accident occurred in Florida, and because the majority of witnesses and documents related to the accident were located in Florida, the interests of justice required that the case be heard there. We stated:
 "The doctrine of forum non conveniens requires a court to determine whether to accept or to decline jurisdiction of claims arising outside the state. Ex parte Integon Corp., 672 So.2d 497 (Ala. 1995). `Initially, the party seeking dismissal must show that the claim[s] arose outside Alabama. Next, that party must show that an alternative forum exists.' 672 So.2d at 499; Ex parte Preston Hood Chevrolet, Inc., 638 So.2d 842, 845 (Ala. 1994); Ex parte Employers Ins. of Wausau, 590 So.2d 888, 893 (Ala. 1991); Jerome A. Hoffman Sandra C. Guin, Alabama Civil Procedure § 2.148 (2d ed.2000) ('A party seeking dismissal under § 6-5-430 must establish that the claim to be dismissed arose elsewhere than in Alabama.' (footnote omitted)).
 "Thus, the trial court is compelled to dismiss an action without prejudice if . . . it is shown that there exists a more appropriate forum outside the state. . . ."
881 So.2d at 399-400.
We held that all of the plaintiffs' claims, including the claims against Emerald, arose in Florida. Additionally, Jackson County, Florida, was clearly a more appropriate forum for the actions than was Houston County, Alabama. Specifically, Kia and Emerald identified 25 nonparty witnesses that they planned to call who resided in Florida and who could not be subpoenaed and made to personally appear in the Houston Circuit Court. The inability to have "live testimony in Alabama" from these witnesses, we held, clearly favored dismissal pursuant to § 6-5-430. Thus, we held that the trial court exceeded its discretion in failing to dismiss the actions pursuant to § 6-5-430. The petitioners here argue that under the authority of Kia Motors the action pending in Etowah County should be dismissed.
 I.
We must first determine whether the claims in this case arose outside Alabama. The parties contend that for § 6-5-430 to apply all of the claims asserted by the plaintiff must have arisen outside the State. See Kia Motors,881 So.2d at 401 (See, J., dissenting) ("I agree with the majority that, for the forum non conveniens statute to apply, all of the claims in the present case must have arisen outside Alabama."). Therefore, we must determine whether all of Annette's claims arose outside this State.
The parties do not dispute that the claims for damages against DaimlerChrysler, Pierson, and the fictitiously named defendants based on theories of strict liability, negligent or wanton failure to warn, wrongful death, and breach of warranty all arose in Utah. However, Annette contends that her claim for damages against Pierson based on negligent or intentional misrepresentation arose in Alabama because the Jeep was purchased in Etowah County and the alleged misrepresentations were made there.
The petitioners do not dispute that the misrepresentation claim would arise in Alabama; instead, they argue that the *Page 1089 
claim "fails as a matter of law" because no misrepresentations were made to John himself and, even if they had been, any misrepresentation claim would have abated at his death and would not have survived in favor of his personal representative. In their petition for the writ of mandamus, the petitioners challenge the trial court's denial of their motion to dismiss the misrepresentation claim.
Generally, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for a writ of mandamus. Ex parte Alloy Wheels Int'l, Ltd.,882 So.2d 819, 822 (Ala. 2003); and Ex parte Liberty Nat'l Life Ins.Co., 825 So.2d 758, 761-62 (Ala. 2002). This is because an "adequate remedy" exists by way of an appeal or, in some cases, permissive appeal by Rule 5, Ala. R.App. P. Ex parte LibertyNational, 825 So.2d at 761-62.[1] Annette argues that it is improper for this Court to review by way of a petition for a writ of mandamus the propriety of the trial court's refusal to dismiss the misrepresentation claim against Pierson. Specifically, she notes that the petitioners have another remedy to determine this issue: they can petition for a Rule 5, Ala. R.App. P., interlocutory appeal.
This Court, however, denied DaimlerChrysler and Pierson's petition for permission to appeal pursuant to Rule 5. Thus, that remedy is no longer available to them.[2] Additionally, an appeal after the conclusion of the trial of this case is not a viable alternative, because the purpose of the doctrine of forum nonconveniens is to avoid litigation in an inconvenient venue.Perfection Siding, 882 So.2d at 312. In light of the fact that a petition for the writ of mandamus is the proper method for obtaining review of a denial of a motion for a change of venue based on the doctrine of forum non conveniens, Exparte DaimlerChrysler Corp., 899 So.2d 928, 932-33 (Ala. 2004), and because there exists no other opportunity for the petitioners to obtain review of the trial court's decision not to dismiss this case on the grounds of forum nonconveniens, we will consider the issue in the instant petition.
The petitioners argue that because John was not a party to the sales transaction between Annette and Pierson regarding the Jeep, neither he nor his estate may sue Pierson as a result of any alleged misrepresentations made during that transaction. Annette's complaint alleges that at the time she purchased the Jeep, *Page 1090 
Pierson was aware of the alleged defect in the roll bar on the vehicle, which Annette alleges caused John's death. Annette asserts that she directly asked one of Pierson's sales representatives "if the roll bar would provide protection in the event that the vehicle rolled over." Annette claims that Pierson's sales representative "represented to [her] in no uncertain terms that the vehicle was safe and that the roll bar would provide protection in the event of a rollover accident. This untrue statement was made for the purpose of inducing [Annette] into purchasing the vehicle." Annette further alleges that these negligent or intentional misrepresentations directly and proximately caused John's death.
"The elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence."Foremost Ins. Co. v. Parham, 693 So.2d 409, 422 (Ala. 1997) (citing Ala. Code 1975, § 6-5-101). Generally, a stranger to a transaction has no cause of action for misrepresentation. Thomas v. Halstead, 605 So.2d 1181,1184 (Ala. 1992). However, this rule is not without exception:
 "`If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.' [37 C.J.S. Fraud § 60, p. 344 (1943)]. . . .
 "In Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured."
Thomas, 605 So.2d at 1184.
In Chase v. Kawasaki Motors Corp., U.S.A.,140 F.Supp.2d 1280 (M.D.Ala.2001), two children ages 12 and 14 were injured while riding in an all-terrain vehicle ("ATV"). The children, through then-mother as next friend, brought an action against the retailer who sold the mother the ATV, as well as against one of the retailer's salesmen, alleging, among other things, fraudulent misrepresentation. Specifically, the mother argued that the salesman and others who worked for the retailer represented to her that it would be safe for the children to use the ATV, despite the fact that the manufacturer of the ATV warned against allowing the ATV to be used by children under 16 years of age.
The court noted that under Alabama law a plaintiff is not always required to prove that a misrepresentation was made directly to him, so long as his injuries resulted from the misrepresentation.140 F.Supp.2d at 1291 n. 8. However, the alleged misrepresentations in Chase were made to theparents of the children, and not to the childrenthemselves. The court stated:
 "[T]he general rule is that the deceit must be practiced directly on the person injured. Thomas v. Halstead, 605 So.2d 1181, 1184 (Ala. 1992). The Supreme Court of Alabama has expanded this rule by allowing a person injured indirectly by a deceit, under some circumstances, to sue the party who made the misrepresentation. Id. at 1184-85.
 "Plaintiffs, as [the p]arents' children and the obvious end-users of the ATV, might appear to fit comfortably within the expanded rule. However, although the cases have found that the misrepresentation does not have to be made directly to the injured party, they have never gone so far as to say that the injured party does not have to prove reliance on his or her part on, the alleged misrepresentation. In fact, the entire basis for third party standing in misrepresentation cases is that the deceiver *Page 1091 
contemplated that the third party would be induced to act by the deceiver's misstatements made to someone else. Sims v. Tigrett, 229 Ala. 486, 158 So. 326, 330 (1934). Therefore, reliance on the part of the injured party must be proved. See generally, Restatement (Second) of Torts § 533; 37 Am.Jur.2d § 298 (1968); William L. Prosser, Misrepresentation and Third Persons, 19 Vand. L.Rev. 231 (1966)."
140 F.Supp.2d at 1292-93 (footnote omitted; emphasis added).
As this Court noted in Delta Health Group, Inc. v.Stafford, 887 So.2d 887, 899 (Ala. 2004):
 "We agree . . . that in certain limited circumstances not relevant here a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff. However, we do not read Thomas [v. Halstead, 605 So.2d 1181 (Ala. 1992),] as excusing a plaintiff from the requirement of establishing his reliance upon that misrepresentation. Thomas appears to contemplate that the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party.
Neither have we located any other authority that purports to excuse a plaintiff in a fraud action from establishing the element of reliance."
(Emphasis added.)
Annette's complaint alleges only that Pierson and its salesman stated to her that the roll bar would provide protection for the occupants of the vehicle in a roll-over accident and that she relied on that representation. There is no allegation in the complaint that John relied on any alleged misrepresentation made by Pierson.[3] Therefore, from the face of the complaint itself, the misrepresentation count against Pierson fails to state a claim and is due to be dismissed.
The parties agree that the remaining claims in this case all arose outside Alabama. Therefore, the petitioners have demonstrated that the claims in this case all arose outside Alabama.
 II. A
After demonstrating that the underlying claims arose outside Alabama, a party seeking dismissal on the basis of forum nonconveniens must show that a more appropriate forum exists.Kia Motors, 881 So.2d at 399, DaimlerChrysler,899 So.2d at 933. The petitioners argue that because the actions in this case arose in Utah and are subject to its substantive law, Utah — specifically Utah County where the accident occurred — presents a more appropriate forum for this case.
The trial court, however, held that no alternative forum existed: although Annette clearly could bring an action against DaimlerChrysler in Utah because it maintains offices there, she would not be able to obtain personal jurisdiction over Pierson *Page 1092 
in Utah because it does no business there. Finally, the trial court held that Pierson's alleged misrepresentations occurred in Etowah County where the Jeep was sold; thus, there is no connection between Pierson's tortious conduct relevant to the misrepresentation claim and Utah.
As noted above, Annette's misrepresentation claim fails as a matter of law and is due to be dismissed. Thus, that claim is no longer a factor in determining whether Utah County, Utah, would be a more appropriate forum in which to hear the case. Additionally, Pierson voluntarily "submitted" itself to the jurisdiction of the courts of Utah County.[4] It appears that there is no barrier to a Utah court's obtaining personal jurisdiction over Pierson. Thus, Utah County is a valid alternate forum for this case.
In determining whether a valid alternative forum is more appropriate for a case, this Court takes into account several factors, including where the acts giving rise to the action occurred. Kia, 881 So.2d at 400; Ex parte PrudentialIns. Co. of America, 721 So.2d at 1138.
The petitioners argue that all of the acts giving rise to this action occurred in Utah, where the accident took place. The petitioners further allege that, like Kia Motors, the only connection with Alabama is that the vehicle involved in the accident was purchased here.
In response, Annette leans heavily on her claim of misrepresentation against Pierson, which would have allegedly occurred in Etowah County. Annette also asserts that the design and manufacture of the Jeep primarily occurred in Michigan; thus, Annette argues, the location of the acts underlying this case do not weigh strongly in favor of the case proceeding in Utah.
The materials before us indicate that the Jeep was indeed designed and manufactured in Michigan. However, the accident itself — where the alleged defect caused the injury — occurred in Utah, and Annette's claims arose in that state. With the misrepresentation claim against Pierson removed from consideration, none of the material acts underlying this case occurred in Alabama. While the fact that many acts, if not all, giving rise to an action occurred outside Alabama does not alone warrant dismissal under § 6-5-430, Ex parte GeneralNutrition Corp., 855 So.2d 475, 480 (Ala. 2003), this prong of the analysis does weigh in favor of dismissing the case under the statute.
 B.
The petitioners also argue that the convenience of the witnesses require that the case be tried in Utah. Specifically, the defendants name 15 potential witnesses who reside outside the State and who would have to travel to Alabama for trial.
A party claiming that its witnesses would be inconvenienced is generally required to make a "detailed statement specifying the key witnesses and providing general statements of the subject matter of their testimony." See Ex parte Preston HoodChevrolet, Inc., 638 So.2d 842, 845 (Ala. 1994). The petitioners produced affidavits from 15 potential witnesses: James Allred, Neal Avery, Bruce Beck, Al Christianson, Jeremy Elswood, Rebecca Ethington, Travis Greenwood, David Harper, Arthur Henderson, Benjamin Henrie, Skott Holyoak, Robert Johnson, Lilly Southwick, William Weaver, and *Page 1093 
Scott Wilbur. Each affidavit described generally the witness's potential testimony and indicated that it would be a hardship for the witness to travel to Alabama to attend the trial. Additionally, many of the witnesses were deposed by the parties. The evidence presented to the trial court revealed the following facts:
James Allred, an investigator with the Utah State Bureau of Investigation, lives in Salt Lake County. He investigated where John had obtained the alcohol John reportedly consumed the night of the accident, but he was unsuccessful in identifying any location at which John may have been drinking. Allred has no testimony regarding the accident itself. In his deposition, Allred stated that he would testify in Alabama "if required," but that he was a single parent and he would have to make arrangements for child care while he was in Alabama.
Neal Avery witnessed the accident; he now lives in Coeur d'Alene, Idaho. He stated in an affidavit that he could testify as to the weather conditions on the night of the accident, the road layout, the position of the Jeep after the crash, and the damage to the vehicle. His personal and business obligations make it "absolutely impossible" to guarantee his outright availability for trial in Alabama, and it would be "very difficult" and a hardship to attend a deposition or trial in Alabama. Utah County, he states, is certainly more convenient than Alabama, because it is far closer to where he lives and works. The trial court found that because Avery lives in Idaho, it would be just as inconvenient for him to travel to Utah as it would be to travel to Alabama. However, the trial court's finding is directly contradicted by Avery's affidavit, in which he states that Utah is much closer and more convenient. This Court also takes judicial notice of the fact that the State of Idaho borders the State of Utah.
Bruce Beck is employed with the Utah State Toxicology Laboratory; he lives in Salt Lake City, Utah. He performed an alcohol analysis on blood drawn from John's body and can testify to the result of that analysis. He stated in an affidavit that personal and business obligations make it "difficult" to guarantee his availability in Alabama for a deposition and trial and that it would be a hardship and inconvenient to travel to Alabama for a deposition or trial. Beck states that it would be more convenient for him to appear in Utah County. The trial court did not discuss Beck in its order denying the motion to dismiss.
Al Christianson, a supervisor with the Utah Highway Patrol, responded to the accident scene and can testify as to the weather conditions on the night of the accident, the road layout, and the position of the Jeep and John's body following the accident. According to his affidavit, personal and business obligations make it "absolutely impossible" for him to guarantee his outright availability for a trial in Alabama, and it would be "very difficult" and a hardship for him to attend a deposition or trial in Alabama. Utah County is more convenient than Alabama for him because it is far closer to where he lives and works. Christianson said that it would be a "good possibility" that he could attend trial in Alabama if he had sufficient notice and his expenses were paid; however, although it would not put an "unusual strain" on the department, it would "impact" the day-today operations of the highway patrol in Utah County if both he and William Weaver, another trooper and also a witness to accident, had to testify at a trial in Alabama. Arrangements could be made if he had a couple of months' notice. *Page 1094 
Jeremy Elswood of the Lehi, Utah, Police Department responded to the accident. He stated in an affidavit that he could testify as to layout of the accident site, his observations of the Jeep, and the position of John's body following the accident. He also took photographs of the scene and the position of Jeep. Elswood stated that personal and business obligations make it "difficult" for him to guarantee his availability in Alabama for a deposition and trial and that traveling to Alabama would be a hardship for him and inconvenient. Furthermore, Elswood stated that it would be more convenient for him to participate in the trial if it were held in Utah County. The trial court concluded that because Elswood did not participate in the actual investigation of the case and instead helped block traffic while others investigated the accident, he had "no relevant information."
Rebecca Ethington, a volunteer with the Lehi, Utah, Fire Department, responded to the accident scene. She assisted in removing John's body from the vehicle and in transporting it to the hospital. Ethington stated that she was a full-time teacher, that she could not guarantee her availability for proceedings in Alabama, especially during the school year, and that she would need advance notice to be able to attend trial in Alabama. She did state in a deposition that she would give it her "best shot" to attend the trial if it were held in Alabama.
Travis Greenwood lives in Lehi, Utah, and is the manager of the mortuary that received John's body. Greenwood's affidavit states that he performed an autopsy on John's body, but his deposition testimony reveals that he remembers nothing of this case.
David Harper, a forensic nurse who resides in Utah County, drew blood from John's body for testing at the request of the Utah Highway Patrol. He testified in an affidavit that personal and business obligations make it "absolutely impossible" for him to guarantee his outright availability in Alabama, that it would be a hardship to travel to Alabama for a deposition or trial, and that Utah County is certainly more convenient for him. He further testified in a deposition that he would need three months' notice before he would be able to come to Alabama for the trial.
Arthur Henderson of the Lehi, Utah, Police Department responded to the accident. He stated in an affidavit that he could testify as to the layout of the accident site, his observations of the Jeep, and the position of John's body following the accident. Henderson stated that personal and business obligations would make it "difficult" to guarantee his availability in Alabama for a deposition or trial, and that it would be hardship and inconvenient to travel to Alabama for the proceedings. Furthermore, Henderson stated that it would be more convenient for him to appear in Utah County. The trial court did not mention Henderson in its order.
Benjamin Henrie, who lives in Salt Lake City, witnessed the accident. He can testify as to the weather conditions on the night of the accident, the road layout, how the Jeep rolled, and the position of the Jeep after the accident. He testified in an affidavit that Utah County is certainly a more convenient forum for him than is Alabama, because it is far closer to where he lives and works. However, he indicated he would travel to Alabama if someone else paid for the trip.
Skott Holyoak also witnessed the accident; he lives in Nebraska. He could testify as to the weather conditions on the night of the accident, the road layout, and the position of the Jeep following the accident. Holyoak stated in an affidavit that personal and business obligations make it "absolutely impossible" for him to guarantee *Page 1095 
his outright availability in Alabama and that it would be "very difficult" and inconvenient for him to attend a trial in Alabama. Utah County, Holyoak stated, is a more convenient location for him than is Alabama. The trial court held that because Holyoak lived in Nebraska, it would be just as inconvenient for him to travel to Utah as it would be to travel to Alabama.
Robert Johnson, a tow-truck operator who lives in Utah County, lifted the Jeep off John's body with his truck. Johnson stated in an affidavit that it would be hard for him to leave work and home to attend proceedings in Alabama. In a deposition, however, Johnson stated that it was easier to appear at the deposition in Utah than at trial in Alabama, but that he would love "a paid vacation to Alabama."
Lilly Southwick of the Lehi, Utah, Fire Department responded to the accident. Southwick worked in an ambulance and assisted in transporting John's body to the hospital. Personal and business obligations would make it "difficult" for her to guarantee availability in Alabama for deposition or trial, and it would be a hardship and inconvenient for her to travel to Alabama for those proceedings. The trial court did not address Southwick in its order.
Scott Wilbur is an ambulance worker with the Lehi, Utah, Fire Department, and he was among those who responded to the accident scene. He assisted in unbuckling the seat belt and then removing John's body from the Jeep. He testified in an affidavit that it would be a hardship and inconvenient to travel to Alabama for a trial. He also testified in a deposition that he would go to Alabama on short notice if subpoenaed but that it would be significantly more convenient to testify in Utah.
William Weaver, a trooper with the Utah Highway Patrol, responded to the accident. He can testify as to the weather conditions on the night of the accident, the road layout, the skid and gouge marks at the scene, as well as the position of the Jeep and the damage it sustained. He also assisted in removing John's body from the Jeep and can testify as to the position of John's body in the Jeep and as to certain photographs taken of the scene. Weaver testified in an affidavit that it would be "very difficult" to attend a trial in Alabama and that Utah County is a more convenient forum for him than is Alabama. However, he stated that he would be available to travel to Alabama if his supervisor would allow him to do so.
The trial court found that many of witnesses possessed no information important to the case and that the depth of their knowledge had been covered in depositions. Some of the witnesses did not reside in Utah, and all indicated that they could travel to Alabama. Additionally, the trial court noted that this is a crashworthiness case, and that testimony regarding the accident investigation and scene was not as critical as in other cases. The wrecked Jeep is stored in Atlanta, Georgia, and the expert witnesses who would testify to crashworthiness are located all over the country and will have to travel no matter where the trial is held. Finally, the trial court noted that the witnesses with knowledge about Annette's misrepresentation claim, which we have said is due to be dismissed, resided in Alabama.
Annette argues that this case is similar to Ex parteDaimlerChrysler Corp., 899 So.2d 928 (Ala. 2004). InDaimlerChrysler, six individuals were injured or killed in a single-vehicle accident that occurred in Turner County, Georgia. The injured parties and the respective representatives of the estates of the decedents filed an action in the Bessemer Division of the Jefferson Circuit Court against the manufacturer of the vehicle — DaimlerChrysler Corporation *Page 1096 
("DCC") — as well as several entities who had rented the vehicle to the plaintiffs. Ultimately, DCC petitioned this Court for writs of mandamus directing the trial court to, among other things, dismiss the underlying actions on the ground offorum non conveniens so that they could be refiled in Turner County, Georgia.
DCC contended that the case was identical to Kia Motors
because the acts underlying the case occurred outside Alabama and because the witnesses it had identified resided in Georgia. This Court, however, held that Kia Motors was factually distinguishable. Specifically, all of the defendants in KiaMotors sought a dismissal pursuant to the doctrine offorum non conveniens, whereas inDaimlerChrysler, only DCC, and none of the other defendants, argued for the case to be dismissed on that basis. Additionally, in Kia Motors, the plaintiffs themselves actually resided in Florida, the state to which the defendants wished the case to be refiled. However, inDaimlerChrysler, all of the plaintiffs resided in Alabama.
The Court in DaimlerChrysler further noted that inKia Motors the defendants presented 25 affidavits from essential non-party witnesses who all stated that it would be inconvenient and a hardship for them to be present for a trial in Alabama. We noted that "[t]he substance of a non-party witness's testimony is equally as important as the witness's physical location when determining whether the doctrine of forum nonconveniens is applicable." 899 So.2d at 936. Although the proposed testimony of DCC's five witnesses was some-what similar to the proposed testimony of the out-of-state witnesses inKia Motors, we noted that the testimony of the witnesses in the latter case was more detailed and provided specific information as to the condition of the scene of the accident. Only one of DCC's witnesses had actually witnessed the accident.
Finally, we noted that the primary issue inDaimlerChrysler was the crashworthiness of the rented automobile and that most of the expert witnesses who were to testify lived outside Alabama and regularly traveled to testify at trials across the country. Although the crashworthiness of the automobile was also a primary issue in Kia Motors, several peculiar environmental factors at the scene of the accident also could have contributed to the injuries in that case. Thus, the need for witnesses familiar with the accident site in Kia Motors was more crucial. There was no such unique need for the witnesses identified by DCC inDaimlerChrysler. We stated:
 "DCC has not shown that the physical presence of its witnesses at trial, assuming that they would not make themselves available in Jefferson County, is of such magnitude as to compel the conclusion that the trial court exceeded its discretion in not finding that `the balance is "strongly in favor of the defendant,"' Kia Motors, 881 So.2d at 400, thus warranting a transfer pursuant to the doctrine of forum non conveniens."
899 So.2d at 937. We thus denied the petitions for the writ of mandamus.
Unlike DaimlerChrysler, both defendants in the instant case petition for the action to be dismissed so that it can be refiled in Utah. Additionally, the facts before this Court show that the petitioners wish to call numerous witnesses who live outside Alabama. Annette claims, however, and the trial court concluded, that because this case involves the crashworthiness of the Jeep, testimony from witnesses describing the scene of the crash is of little relevance, as was the case inDaimlerChrysler. In Kia Motors, on the other hand, the testimony of eyewitnesses was more relevant because certain environmental *Page 1097 
factors at the scene of the crash arguably contributed to the accident. Annette maintains that such environmental factors do not exist in the instant case; thus, the testimony of the petitioners' proffered witnesses is not as necessary as the testimony of the witnesses in Kia Motors.
It is true that several of the defendants' witnesses, such as Allred and Greenwood, seem to possess little information that is relevant in this case. However, although there is no allegation that contributing "environmental" factors would make testimony as to the accident scene in this case more crucial, some of the witnesses appear to possess highly relevant testimony. Annette's primary allegation regarding the alleged defect in the Jeep is that when it crashed, the roll bar, to which the seat belt was attached, "failed" and shifted forward. This loosened the seat-belt system, allowing John to be "ejected" during the crash and killed. Several witnesses identified by DaimlerChrysler, including four law-enforcement officers and three emergency-medical responders, stated that they could testify as to the position of John's body relative to the Jeep after the crash. In fact, Scott Wilbur specifically described the position of John's body in relation to the seat and seat belt and testified that he had to unbuckle the seat belt to free the body.
These witnesses, along with the three witnesses who actually saw the accident and can describe how it occurred, all stated that Utah was a more convenient location for them to appear and testify. Although several of these individuals stated that they could appear in Alabama, with varying degrees of certainty, all stated that Utah County was a closer, more convenient forum for them.[5]
Unlike the witnesses in both Kia Motors andDaimlerChrysler, the witnesses in this case do not simply reside in states adjacent to Alabama. According to the petitioners, the witnesses will have to travel nearly 2,000 miles to attend trial in Alabama, at great expense. Annette, however, has identified no witnesses who reside in Alabama.[6]
The materials before us demonstrate numerous witnesses with relevant testimony who reside in Utah or much closer to Utah than to Alabama. Annette has identified no witnesses who reside in Alabama. Given the number of witnesses and the extreme distance they would have to travel, we hold that the convenience of the parties and witnesses weighs heavily in favor of dismissing the action. *Page 1098 
 C.
Finally, we must determine whether a dismissal would be in the interest of justice. The petitioners argue that the interest of justice favors a dismissal because of the extreme expense of transporting all of their witnesses nearly 2,000 miles to Alabama. The petitioners contend that decisions involving calling or recalling witnesses to testify are often made during the trial proceedings, which would require keeping their witnesses on hand in Alabama for the duration of the trial at huge inconvenience and expense.
We agree. Annette has identified no witnesses who reside in Alabama, and it appears that the witnesses the petitioners assert they intend to call at trial live outside Alabama and would find Utah a more convenient forum.
Moreover, none of the underlying acts in this case, other than the purchase of the Jeep, have any connection to Alabama, and all of the claims in this case arose in Utah. Because the acts underlying this case occurred outside Alabama, and because of the great expense and inconvenience of the witnesses the petitioners have identified in traveling to Alabama for a trial, we hold that the interests of justice weigh heavily in favor of dismissing this case.[7]
 Conclusion
We hold that the trial court exceeded its discretion in denying the petitioners' motions to dismiss. The trial court is directed dismiss Annette's misrepresentation claim against Pierson and to dismiss Annette's remaining claims pursuant to Ala. Code 1975, § 6-5-430.
PETITION GRANTED; WRIT ISSUED.
HARWOOD, STUART, and BOLIN, JJ., concur.
SEE, J., concurs specially.
PARKER, J., concurs in the result.
NABERS, C.J., and LYONS and WOODALL, JJ., dissent.
[1] This general rule is not without exceptions. See, e.g.,Ex parte Alloy Wheels, 882 So.2d at 822 ("One of the exceptions is the denial of a motion grounded on a claim of lack of personal jurisdiction. . . ."); Ex parte Rizk,791 So.2d 911, 912 (Ala. 2000) ("While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgmentgrounded on a claim of immunity is reviewable by petition for writ of mandamus."); and Ex parte Snow,764 So.2d 531, 537 (Ala. 1999) (noting that a the denial of a summary-judgment motion is reviewable by a petition for a writ of mandamus when the undisputed evidence shows that the plaintiff failed to act with due diligence in identifying fictitiously named defendants). See also Integon Corp.,672 So.2d at 499 (holding that a petition for a writ of mandamus is the proper method for challenging a forum non conveniens
ruling).
[2] An appeal of an interlocutory order pursuant to Rule 5 is generally appropriate only when "an immediate appeal from the order would materially advance the ultimate termination of the litigation, and that the appeal would avoid protracted and expensive litigation." Rule 5(a), Ala. R.App. P. A reversal of the trial court's order denying the petitioners' motion to dismiss Annette's misrepresentation claim would leave most of Annette's action intact and thus not "advance the ultimate termination of the litigation."
[3] In her response to the petitioners' motion to dismiss the misrepresentation claim, and on appeal, Annette asserts that John relied on Pierson's alleged misrepresentation. However, thecomplaint does not allege that John relied on the allegedmisrepresentation, and Annette never attempted to amend the complaint to add such an allegation. See Rule 15, Ala. R. Civ. P. Additionally, she did not request that the trial court withhold ruling on the motion to dismiss the misrepresentation claim so that she could seek more discovery relating to John's alleged reliance, assuming that any such facts regarding John's reliance would be known to the defendants but not to Annette. Additionally, the trial court held that it was undisputed that Pierson's sales representative "had no direct conversations with John Walker about the protection provided by the roll bar."
[4] Moreover, § 6-5-430 allows for a dismissal to be conditioned upon the defendant's filing a consent to submit to the jurisdiction of the identified forum, thus negating any concern regarding personal jurisdiction.
[5] Additionally, the petitioners argue that Utah law provides in some instances a comparative-fault analysis in products-liability cases; thus, John's own alleged negligence in driving the Jeep would be an issue at trial, making testimony regarding the nature of the crash and John's alleged alcohol consumption more relevant than in other crashworthiness cases. Annette did not respond to this argument, but it is unclear whether it was raised in the trial court. Although the trial court in its order referenced the application of Utah law to some of Annette's claims, the comparative-fault issue is not addressed. Therefore, we will not consider it.
[6] Annette argues in her brief that there are several witnesses in Alabama who will have to testify at trial, and that it would be inconvenient for them to travel to Utah. First, Annette claims that certain "family" witnesses are to testify, but she does not explain who these witnesses are or what their testimony will be. Annette also contends that Pierson named 11 witnesses who reside in Alabama and cites responses by Pierson to certain interrogatories. However, these interrogatory responses list persons only in response to a request by Annette for the names of those who may have information regarding the case. There is nothing to indicate that either Pierson or Annette plan to call these persons to testify at trial, and Annette does not explain how their testimony is pertinent.
[7] Annette also argues that the petitioners have waived the issue of forum non conveniens because they waited over six months after the complaint was filed before filing their motion to dismiss on that basis. Section 6-5-430 contains no limitations period within which to move for a dismissal. Annette suggests that Rule 82(d)(2)(c), Ala. R. Civ. P., which provides that a motion for a change of venue should be filed within 30 days, provides guidance. Rule 82(d), however, addresses the transfer of a case filed in an improper venue; it does not address the doctrine of forum non conveniens. There is no dispute that Etowah County is a proper venue in this case; thus, Rule 82(d) is inapplicable.
As the petitioners note, this Court has required that parties requesting a dismissal on the basis of forum nonconveniens produce evidence describing their potential witnesses' testimony and the inconvenience those witnesses would suffer if they were required to testify in the initial forum. SeeEx parte Preston Hood Chevrolet, Inc., 638 So.2d at 845
("a defendant cannot assert the inconvenience of its witnesses without making a detailed statement specifying the key witnesses and providing general statements of the subject matter of their testimony"). The petitioners claim that they were required to search several states for witnesses and to obtain the necessary affidavits before they could file their motion to dismiss.
The trial court declined to find that the petitioners waived their right to request a dismissal under § 6-5-430, and we agree. Although there undoubtably exists a point in which a delay between the filing of a complaint and the filing of a motion to dismiss on the basis of forum non conveniens could amount to a waiver, under the particular facts of this case, we do not find that that point was reached here. *Page 1099