[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11668
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-01325-CLM

EDWARD ARRINGTON,
ADDRENAL ARRINGTON,

                                                      Plaintiffs-Appellants,

versus

WELLS FARGO,
WELLS FARGO FINANCIAL ALABAMA, INC.,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 28, 2020)

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

The Arringtons appeal the district court's dismissal of their second amended complaint for failure to comply with Federal Rule of Civil Procedure 8.  We affirm.

## FACTUAL BACKGROUND

Addrenal Arrington and her husband previously sued Wells Fargo in 2010 for improperly foreclosing on their home.[1]  This case is not a rehash of the 2010 foreclosure case, but some facts are still relevant.

In 2010, Wells Fargo foreclosed on the Arringtons' home and then purchased the home at its own home auction.  Following the foreclosure and sale, the Arringtons sued Wells Fargo for "illegal foreclosure and illegal ejection."  Wells Fargo and the Arringtons eventually settled the lawsuit.  As part of the settlement, they agreed to set aside the foreclosure sale.  And the settlement agreement also provided that Wells Fargo would "record the Court's order" setting aside the foreclosure sale and reinstating the mortgage with the probate court, "record a Satisfaction of Mortgage" with the probate court, and "request that [credit reporting] agencies remove all derogatory comments reported by Wells Fargo concerning the Arringtons' mortgage."

Wells Fargo did as required under the settlement agreement, entered the new judgment, and filed a satisfaction of mortgage.  But the property deed was not

---

[1] We refer to Wells Fargo Bank and Wells Fargo Financial Alabama jointly as "Wells Fargo."

transferred to the Arringtons. Wells Fargo's name remained on the foreclosure sale deed.

After the settlement, the county tax collector continued to send tax notices to Wells Fargo rather than to the Arringtons. This "caused confusion" with the property taxes and caused the Arringtons to get behind on the property taxes. The home was eventually sold at a tax lien sale. In 2018, the Arringtons managed to "successfully receive[] [their] property, deed, [and] title of ownership[] back."

## PROCEDURAL HISTORY

The Arringtons filed their initial complaint pro se in Alabama state court, but it was removed to the United States District Court for the Northern District of Alabama based on the diversity of the parties. The initial complaint alleged only a breach of contract claim, but it alluded to others. Shortly after removal, Wells Fargo filed a motion to dismiss for failure to state a claim. The district court ordered the Arringtons to amend their complaint and to follow the Federal Rules of Civil Procedure.

The Arringtons' amended complaint had a statement of facts and five claims for breach of contract, unlawful acts, fraud, malicious torts, and negligence. Wells Fargo again moved to dismiss for failure to state a claim. After the deadline to respond had expired, the Arringtons asked for an extension, which was granted, but the Arringtons did not meet the new deadline. Because the Arringtons were pro se,

3

the district court granted another extension. Again, the Arringtons did not respond, so the district court set a hearing, ordering the parties to appear.

At the hearing, the district court told the Arringtons that they could not bring claims against Wells Fargo based on Wells Fargo's actions from before the settlement because the Arringtons' settlement agreement with Wells Fargo barred pre-settlement claims. Trying to understand what the Arringtons were alleging in the amended complaint, the district court asked: "What you're really claiming in here is that we had an agreement to settle all those claims, and now they've breached that settlement agreement." Ms. Arrington said that was it.

The district court also gave the Arringtons examples of how to amend the complaint so that their claims were stated properly:

> THE COURT: I'm not expecting you to do it like a lawyer would do it, but I do want y'all to go back and state specifically in an amended complaint here are the things that we agreed to. We agreed to A, B, C, and D.
>
> MS. ARRINGTON: Okay.
>
> THE COURT: And here are the ways they did not live up to that agreement. Here's how they violated or breached the agreement. They did one, two, three, and four.
>
> MS. ARRINGTON: Okay.
>
> THE COURT: Okay? So, for example, you might allege they agreed to release or satisfy the mortgage, but they have not done so based upon these facts.

4

Near the end of the hearing, the district court reemphasized this point and provided another example of a short and plain breach of contract claim:

> THE COURT:  I'm going to give you a deadline to file your amended complaint by, telling me who you're suing and the factual reason why you claim they violated your rights.
>
> MS. ARRINGTON:  Okay.
>
> THE COURT:  Okay?  And you could – so I want you to just number each paragraph.
>
> MS. ARRINGTON:  Okay.
>
> THE COURT:  And just one sentence per paragraph, per numbered paragraph.  This is a breach of contract action.  Number one, this is a breach of contract action.  Number two, we are suing X, Y, and Z for breach of contract.  Three, we had a contract.  Four, the contract was entered on this date.  Five, the contract required the defendants to do X.  Six, the contract also required the defendants to do Y.  Seven, the contract also required the defendants to do Z.  Eight, the contract did not do X.  Okay?  And so on.
>
> And then the next paragraph, they did not do Y. They did not do Z. And we're suing for a breach of contract.

The Arringtons filed their second amended complaint one day late—after requesting and receiving another extension—alleging eleven claims for 1) breach of contract, 2) breach of covenant, good faith, and fair dealing, 3) intentional infliction of emotional distress, 4) fraudulent actions, 5) slander and defamation, 6) Fair Credit Reporting Act violations, 7) Alabama "unfair / unlawful act consumer protection," 8) negligence, 9) intentional torts, 10) "[p]unitive," and 11) "[p]ain and [s]uffering" and attaching the settlement agreement.  The second amended complaint did not

5

follow the district court's examples. The complaint consisted of one paragraph per claim with each paragraph containing multiple sentences and is the only complaint in which the Arringtons did not number their paragraphs. It was also disorganized and difficult to read. Wells Fargo again moved to dismiss the second amended complaint for failure to state a claim.

The district court ordered the Arringtons to show cause why it should not grant the motion to dismiss. In response, the Arringtons filed a document titled "Cause of Action," which included a paragraph explaining why the district court should not grant the motion to dismiss. Wells Fargo replied that the "Cause of Action" document did not address the issues raised in the motion to dismiss.

The district court again issued a show cause order because the Arringtons' "Cause of Action" document had "additional factual allegations" that were not in the complaint and it was "not responsive to Wells Fargo's Motion to Dismiss." The order mentioned a telephone conference held by the district court and attended by the Arringtons and Wells Fargo, in which "[t]he court instructed the Arringtons to . . . respond to the merits of Wells Fargo's arguments for dismissal" and warned them that "failure to timely respond to Wells Fargo's Motion to Dismiss **WILL** result in immediate dismissal of [the] case."

The Arringtons responded to the new order to show cause, stating that they did provide "specific facts to the best of [their] knowledge" and "did give fair

notice." They made broad statements like, "Plaintiffs have linked factual allegations to specific counts," but did not refer to their complaint or any case law in order to demonstrate how their complaint satisfied the standard and why it should not be dismissed. They also attempted to rephrase the complaint within their response.

The district court dismissed the second amended complaint with prejudice because it "fail[ed] to satisfy Rule 8." The complaint had not satisfied the rule, the district court found, because it did not "allege any specific facts, actions, or statements against Wells Fargo." The district court said that, as pro se litigants, the Arringtons were entitled to have the second amended complaint read liberally, but it emphasized they had three chances to plead their complaint in compliance with Rule 8 and two chances to respond to Wells Fargo's motion to dismiss. The district court found that "[b]y failing to respond to Wells Fargo's substantive arguments, the Arringtons effectively abandoned their claims."

The Arringtons appeal the dismissal of their second amended complaint.

## STANDARD OF REVIEW

We review the district court's decision to dismiss the complaint de novo. Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118, 1120 (11th Cir. 2006). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Boyd v.

Warden, Holman Corr. Facility, 856 F.3d 853, 864 (11th Cir. 2017) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009)) (internal quotation marks omitted).

## DISCUSSION

The Arringtons appeal the dismissal of three of their eleven claims in the

second amended complaint. They argue that because pro se pleadings must be read

liberally their claims for breach of contract, fraud, and negligent misrepresentation

satisfied the pleading requirements of Rule 8(a)(2). And the Arringtons argue that

due process required that the district court hold an evidentiary or inquisitorial

hearing to give them the opportunity to explain their claims before dismissal.

### *Rule 8*

The Arringtons argue that their pleadings satisfy Rule 8 under the liberal

pleading standard for pro se plaintiffs. They argue that the necessary facts, although

"scattered," "not neatly matched" with the relevant legal claims, and improperly

labeled, were present in the complaint and that Wells Fargo was put on notice as

required.

Rule 8 requires "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be

simple, concise, and direct." Id. at 8(d)(1). The purpose is to "give the defendant

fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted).

8

Although the complaint does not need detailed factual allegations, the "grounds" must be "more than labels[, legal] conclusions, and a formulaic recitation of the elements of a cause of action." Id.

Because the Arringtons were pro se at the time of the complaint's filing, they are entitled to "wide latitude when construing their pleadings and papers." S.E.C. v. Elliot, 953 F.2d 1560, 1582 (11th Cir. 1992). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Parus, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(f) and Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks and italics omitted). This liberal construction of their pleadings, however, does not excuse pro se litigants from following the procedural rules. Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007). Nor does the pro se leniency allow a court "to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (italics and citation omitted).

Even with this lenient and liberal construction of the pleadings, the Arringtons' second amended complaint did not satisfy Rule 8. Instead of containing "a short and plain statement of the claim" that demonstrated relief and gave fair notice, the second amended complaint contained allegations that were vague, disorganized, repetitive, and confusing, with no clear direct connection to each other

9

or to the relevant claims.  Fed. R. Civ. P. 8(a)(2).  We consider each claim in turn, starting with the breach of contract claim.

### 1.  Breach of Contract Claim

The Arringtons' second amended complaint had no "short and plain" statement alleging the elements of a breach of contract claim.  Fed. R. Civ. P. 8(a)(2).  In Alabama, "[i]n order to recover on a breach-of-contract claim, a party must establish:  (1) the existence of a valid contract binding the parties;  (2) the plaintiff's performance under the contract;   (3) the defendant's nonperformance;   and (4) damages."  Harp Law, LLC v. LexisNexis, 196 So. 3d 1219, 1224 (Ala. Civ. App. 2015).  However, the paragraph under the "Breach of Contract" heading in the Arrington's second amended complaint stated:

> In Alabama 2010-2017, Wells Fargo Financial / Wells Fargo Bank failed action, by deception of property, deed, title ownership, reinstatement, note.  Wells Fargo intentionally inflicted emotional distress on the Arrington family.  Resulting of taking possession, the consent was null and void.  Wells Fargo caused the damages, and threats of being homeless, by outrageous conduct by Wells Fargo. Wells Fargo Financial and Wells Fargo Bank action or lack of action cause this injury to the Plaintiffs, occurring damages.  The Defendants are liable for damages and they violated the Plaintiff's rights.  The Defendants engaged in unlawful acts any other violation deems just and proper.

Other than damages, there is no short and plain statement about any of the other necessary elements for a breach of contract claim.

### 2.  Fraud Claim

10

The Arringtons also failed to allege a short and plain statement showing entitlement to relief for fraud under Alabama law.  In Alabama, to demonstrate fraud a plaintiff must allege:  "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation."  Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res., 986 So. 2d 1093, 1114 (Ala. 2007) (emphasis and quotation marks omitted).  The allegations under the "Fraud" heading in the Arringtons' second amended complaint were:

> In Alabama 2010-2017, Wells Fargo Bank fail of committing conspiracy schemes, transfer and selling of property.  No conveyance of deed.  Defendants breach of committing conspiracy scheme, concealing information to unknown parties putting the Plaintiffs out of reach.  Wells Fargo directly or indirectly responsible for damage from 2010-2019.  Resulting in bad behavior and bad faith, caused confusion of the property because taxes was behind.  The Arrington family successfully receive property back in 2018.  By Wells Fargo actions or lack of action is liable for ALL damages.

This had no statement—"short and plain" or otherwise—explaining the Arringtons' entitlement to relief under the elements of fraud.

### 3.  Negligent Misrepresentation Claim

The second amended complaint also failed to give a short and plain statement alleging an entitlement to relief for negligent misrepresentation.  To establish a misrepresentation claim under Alabama law, a plaintiff must prove that there was "1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly,

11

without knowledge, or mistakenly [by defendant], 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." Ex parte DaimlerChrysler Corp., 952 So. 2d 1082, 1090 (Ala. 2006) (quotation omitted). To establish their claim, under the "Negligence" heading in the second amended complaint, the Arringtons stated:

> In Alabama, 2010-2017, Wells Fargo Financial, Wells Fargo Bank owed a legal duty of care, conveyance to the Arrington Family. Wells Fargo Financial, Wells Fargo Bank, caused alleged illegal transfer/sale of the Arrington property, resulting by Wells Fargo fraudulent activity, take possession, unauthorized to do so. Wells Fargo was intentional negligent. The Judge found it null and void. Arrington performed their obligation. Wells Fargo promised to fix property, deed, title, in a timely manner. They failed their mission. The Plaintiffs was injured, and damages occurred of fearing of being homeless twice, strangers on property, sheriff presence. The Plaintiffs had an emergency hearing. Wells Fargo Financial and Wells Fargo Bank action of lack of actions cause the harm to the Plaintiffs, and is liable, directly or indirectly contributed to the cause of Plaintiffs injury, cause of damage.

Although the Arringtons alleged that Wells Fargo had a duty and that Wells Fargo caused damage, they did not give a short or plain statement of how Wells Fargo negligently breached its duty beyond "labels[, legal] conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

## *Evidentiary Hearing*

The Arringtons argue that because of "their lack of legal sophistication and writing ability" due process required the district court to hold an evidentiary or inquisitory hearing before dismissing their claims. They argue that the court should

adopt this as a new procedure for non-incarcerated pro se litigants because dismissal of a complaint involves a fundamental right of access to courts, there is significant risk that pro se litigants will be erroneously deprived of their right to access the courts, and providing a hearing would be in the government's interest. Alternatively, they argue that counsel should have been appointed.

We decline to adopt a new rule of procedure requiring a hearing before dismissing a pro se complaint. As the Supreme Court explained in Twombly, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." 550 U.S. at 558 (internal quotation marks and alterations omitted) (emphasis added). In any event, the Arringtons had multiple opportunities to explain their allegations to the district court. The district court granted several time extensions, forgave multiple late pleadings, allowed two chances to amend the complaint, gave them two chances to show cause as to why the complaint should not be dismissed, and held a hearing and a conference call in which the district court explained how to amend the complaint before dismissing it. The district court bent over backwards to explain how to allege a complaint that would survive dismissal. The failure to meet the Rule 8 pleading standard was not because of the Arringtons' lack of opportunity to explain their case.

**AFFIRMED.**

13